[No. 23746-0-III.   Division Three.   February 14, 2006.]

LAURIE L. BARKER, *Appellant*, v. ADVANCED SILICON MATERIALS, L.L.C., *Respondent*.

*Steven C. Lacy*, for appellant.

*Kathryn L. Feldman* and *Stephen J. Kennedy* (of *Ater Wynne, L.L.P.*), for respondent.

¶1 SWEENEY, J. — This appeal follows dismissal of claims of sexual discrimination (on summary judgment) and retaliatory discharge (following a bench trial). The question posed on the first claim is whether the employee has made a sufficient showing that the employer's explanation for promoting a man for a position for which she also applied was pretextual. We conclude that her showing on that issue is conclusory and speculative and therefore affirm the summary dismissal of the claim. We also conclude that substantial evidence supports the trial judge's finding of fact that retaliation was not a substantial motivating factor in the employer's decision to fire the employee here, despite the fact that the investigation leading to her discharge was inept. We therefore affirm the dismissal of the employee's complaint.

## FACTS

### SEX DISCRIMINATION

¶2 Advanced Silicon Materials, L.L.C. (ASIMI, formerly Union Carbide), operates a plant with two industrial laboratories in Moses Lake, Washington. Laurie L. Barker started working there as a technician in 1984. She was promoted first to lead technician and then supervisor of one of the labs in 1999. The company made Gene Champion supervisor of the other lab.

¶3 ASIMI decided to eliminate the lab supervisor positions and put one lab manager in charge of both labs in December 2001. It planned to demote the other supervisor back to lead technician. The company promoted Mr. Champion and demoted Ms. Barker. Ms. Barker prepared a sex discrimination suit.

RETALIATORY DISCHARGE

¶4 Troy Vingom is ASIMI's information systems manager. He began investigating suspected leaks of confidential management information on March 7, 2002, a Thursday. The concern was that someone was tapping into management e-mails. Many employees had never changed their original, insecure e-mail passwords for more secure ones and so the e-mail system was vulnerable.

¶5 Ms. Barker served ASIMI with her lawsuit on Monday, March 11. Mr. Vingom was not aware of this. But other managers and the human resources department knew about her suit.

¶6 Mr. Vingom began his investigation of voice mail security on March 13. The system had been set up to "lock out" a mailbox extension if an invalid password was entered two or three times. Again, many employees were still using their three-digit telephone extension, the password provisionally created when the system was installed in 1996. And this was common knowledge among ASIMI employees, including Ms. Barker. Ms. Barker had reported the voice mail security problem to management in the mid 1990s, but nothing was done. And she admitted having made unauthorized intrusions into the voice mail of a former director of the human resources department in the past.

¶7 Mr. Vingom generated a report of every voice mail lockout since 1996. This report showed the extension from which each failed access attempt had been made. There were a total of 246. One hundred ninety-one originated at the desk of an authorized user. Of the remaining 55, Ms. Barker's extension was the source of 11. Ms. Barker's work area was easily accessible, and people frequently used her telephone.

¶8 On March 14, the voice mails of two human resources employees, including Human Resources Director Dean Martinez, locked out following access attempts from Ms. Barker's extension. On March 20, at 3:31 P.M., the voice mail

of the company's chief executive officer, Hideo Ueda, locked down from Ms. Barker's extension. This invasion was immediately reported to Mr. Vingom.

¶9 Forty-five minutes after the lockout, Ms. Barker's supervisor, Joe Slanga, was sent to see if Ms. Barker was at her desk. He reported that she was. Ms. Barker claimed that she had arrived just minutes before Mr. Slanga and had been out of the building at 3:31 P.M. Ms. Barker was summarily terminated on March 21, 2002. She then added a claim of retaliatory discharge to her sex discrimination action.

PROCEDURE

¶10 ASIMI moved for summary judgment dismissal of both claims. It conceded Ms. Barker's prima facie case of both gender discrimination and retaliation. Ms. Barker conceded that ASIMI had produced an arguably plausible explanation on each claim. ASIMI then argued that Ms. Barker did not make a sufficient showing that the company's explanation for the termination was a pretext.

¶11 The trial court summarily dismissed the gender discrimination claim. On the retaliation claim, however, the court found grounds for an inference of pretext sufficient to preclude summary judgment and warrant a trial.

¶12 The parties tried the case to a judge sitting without a jury. The court found that Ms. Barker had not carried her burden of proving by a preponderance that ASIMI retaliated against her. The court believed that the ASIMI managers were inept but sincere in their handling of the voice mail investigation. The court was persuaded that ASIMI sincerely, if misguidedly, believed that Ms. Barker was responsible for the recent attempts to access the voice mails of the human resources director and the chief executive officer. The court entered corresponding written findings of fact and conclusions of law.

¶13 Ms. Barker appeals both the summary dismissal of her sex discrimination claim and the judgment dismissing her retaliation claim.

## DISCUSSION

### Sex Discrimination Claim—Sufficiency of Evidence

¶14 The parties do not dispute the prima facie showing here. Ms. Barker was a qualified woman who was passed over in favor of a man. ASIMI responded that the promotion decision was based on performance. The sole question for us is whether Ms. Barker produced enough evidence of pretext to survive summary judgment.

¶15 Ms. Barker first contends that ASIMI's case for nondiscrimination depends entirely on the credibility of Mr. Slanga. She argues that Mr. Slanga supervised both Mr. Champion and Ms. Barker. He prepared the performance evaluations on which ASIMI relied. Ms. Barker suggests that Mr. Slanga single-handedly engineered Mr. Champion's promotion despite Ms. Barker's superiority. As evidence of this, she points to deposition testimony that another employee thought Mr. Slanga was a liar. Ms. Barker also alleged that Mr. Slanga is a homosexual. She believed he was attracted to Mr. Champion.

¶16 Ms. Barker produced deposition testimony from several witnesses that she had been a particular favorite of Mr. Slanga's and that Mr. Slanga was believed to be "grooming" her to succeed him. She nevertheless contends that in 1999 Mr. Slanga promoted her from lead technician to lab supervisor from a mixed-gender field, solely because *other* managers were involved in that decision. She offered opinions by other employees that Mr. Champion's evaluations did not reflect his shortcomings.

¶17 Ms. Barker concedes that the disputed promotion decision was largely based on an evaluation of employees' management potential conducted by a panel of managers in 2001. From all of this she asserts that a trier of fact could infer that ASIMI deliberately manipulated this process "to hide a discriminatory animus beneath a layer of deceit." Appellant's Br. at 24-25.

¶18 ASIMI responds with the performance evaluations underlying the promotion. They are in this record. ASIMI

argues that Mr. Champion was clearly the stronger management candidate. Even if a trier of fact were to find that Ms. Barker was marginally more qualified, ASIMI contends, she could not show disparities " 'of such weight and significance that no reasonable person, in the exercise of impartial judgment,' " could have promoted Mr. Champion. *See, e.g., Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

¶19 Moreover, ASIMI argues that the fact that Mr. Slanga promoted Ms. Barker to lab supervisor over male applicants only two years before (Clerk's Papers (CP) at 32) creates a strong inference that he did not discriminate against her on this occasion. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 189, 23 P.3d 440 (2001).

¶20 In sum, ASIMI argues that the court correctly ruled that Ms. Barker had produced no evidence of gender discrimination but merely speculation based solely on the fact that a man was chosen.

¶21 We review summary judgments de novo; we engage in the same inquiry as the trial court. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000). The summary judgment order here, unfortunately, does not designate the evidence relied on as required by CR 56(h). We will nonetheless view all facts in this record and their inferences in a light most favorable to the nonmoving party, Ms. Barker. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment should be granted where reasonable minds can reach only one conclusion based on the admissible facts in evidence. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274 (2003).

¶22 This is an action for sex discrimination in employment. And so we follow the burden-shifting protocol of *McDonnell Douglas Corp. v. Green.*[1] Ms. Barker must first show that (1) she is a woman, (2) she applied and was

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

qualified for an available promotion, (3) she was not offered the position, and (4) the promotion went to a man. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 735, 904 P.2d 793 (1995). This creates an inference of discrimination which the employer may then rebut by articulating a plausible nondiscriminatory explanation. *Hill*, 144 Wn.2d at 181. Ms. Barker made the necessary prima facie showing. And ASIMI rebutted it with evidence that the promotion decision was based on performance.

¶23 The burden then shifted back to Ms. Barker to produce admissible evidence sufficient to create a triable issue of fact as to whether the reason articulated by ASIMI was a pretext and that discrimination was a substantial factor in Mr. Champion's promotion. *Marquis v. City of Spokane*, 130 Wn.2d 97, 113-14, 922 P.2d 43 (1996). Only if both parties meet their intermediate burdens and produce evidence supporting reasonable competing inferences of both discrimination and nondiscrimination should the case be sent to a jury. *Hill*, 144 Wn.2d at 186.

¶24 The burdens at all three intermediate stages are burdens of production, not of persuasion. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 98-102, 827 P.2d 1070 (1992). On motion for summary judgment the trial court does not weigh evidence or assess witness credibility. Neither do we do so on appeal: "Our job is to pass upon whether a burden of production has been met, not whether the evidence produced is persuasive. That is the jury's role, once a burden of production has been met." *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 623, 60 P.3d 106 (2002) (emphasis omitted).

¶25 Here, ASIMI produced the performance evaluations. They show that Mr. Champion was at least equally qualified for the job. Ms. Barker produced no contrary evidence beyond her speculation that Mr. Slanga's alleged sexual preference affected his judgment. Even if that were a motive, it would not support a claim of sex discrimination. The court properly rejected evidence of Mr. Slanga's life-style. Ms. Barker argues both that Mr. Slanga made the

decision himself without authority from above and also that the decision was made by others in spite of Mr. Slanga. The record shows that the decision to put Mr. Champion in charge was made by a group of managers, including Mr. Slanga and his superiors. What Mr. Slanga then had to insist on with his boss was to upgrade Mr. Champion's title and salary to match his added responsibilities.

¶26 Moreover, the promotion decision here was made by the same supervisor who Ms. Barker showed was particularly fond of her and from whom she had received favorable treatment in the recent past. Ms. Barker must overcome a strong inference that the adverse decision was not discrimination when the same decision maker has hired or promoted the plaintiff in the recent past. *Hill*, 144 Wn.2d at 189 (citing federal cases). The plaintiff must produce evidence sufficient to reconcile the inherent contradiction. *Id.* at 189-90. Ms. Barker has not done this.

¶27 The employee must ultimately create a genuine issue of material fact that the employer's stated reason for the adverse action was a pretext for discrimination. *Renz*, 114 Wn. App. at 619. Ms. Barker did not meet this burden of production. And the trial court properly ruled as a matter of law that a reasonable jury could not find that sex was more likely than not a substantial factor in passing her over for promotion. *Hill*, 144 Wn.2d at 190.

¶28 ASIMI was entitled to summary judgment on the claim of sex discrimination. *See Hill*, 144 Wn.2d at 185-86 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

RETALIATION—SUBSTANTIVE EVIDENCE

¶29 Ms. Barker next assigns error to the court's conclusion that her discharge was not retaliation for her suing ASIMI. She correctly states the court's three key findings of fact: (1) ASIMI's voice mail investigation was "incomplete" and "incompetent," (2) the managers failed to perceive the inadequacies of the investigation, and (3) the managers sincerely believed Ms. Barker was guilty of misconduct. Ms.

Barker then labels the court's findings (2) and (3) (the managers were incompetent but sincere) as a *conclusion of law* by the court that her termination was not motivated by retaliation. This conclusion of law, she then argues, is inconsistent with finding (1) (the investigation was inadequate).

¶30 Findings of fact control over inconsistent conclusions of law. *Kane v. Klos*, 50 Wn.2d 778, 789, 314 P.2d 672 (1957). Therefore, Ms. Barker argues, the "conclusion" that the managers were not motivated by retaliation must be reversed as a matter of law. Ms. Barker contends that a good faith belief is not a defense in an action alleging discrimination.

¶31 ASIMI responds that Ms. Barker confuses her burden on summary judgment with that at trial. Once she survived summary judgment and the case went to trial, Ms. Barker had the burden to prove that retaliation was a significant factor in the decision to fire her. She simply failed to do this. The trier of fact found that: "Plaintiff has failed to establish by a preponderance of the evidence that ASIMI's decision to terminate her employment was motivated in any respect by retaliation for her lawsuit." CP at 976 (conclusion of law 6). The court believed ASIMI's witnesses. And ASIMI then concludes that the judgment should be affirmed.

■ ¶32 The trial court weighed the evidence here. So we review to determine whether the record supports the findings of fact, the findings support the conclusions of law, and, of course, whether the conclusions support the decision. *Weyerhaeuser v. Tacoma-Pierce County Health Dep't*, 123 Wn. App. 59, 65, 96 P.3d 460 (2004). We will affirm those findings that are based on substantial evidence. *Para-Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717 (1987). We defer to the trier of fact in matters of witness credibility and conflicting testimony. *Pilcher v. Dep't of Revenue*, 112 Wn. App. 428, 435, 49 P.3d 947 (2002). We give the party who prevails in the trial court the benefit of all reasonable inferences from the evidence that favor the

court's findings. *Weyerhaeuser*, 123 Wn. App. at 65; *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 792, 98 P.3d 1264 (2004). Unchallenged findings are verities. *Perry*, 123 Wn. App. at 792. We construe the absence of a finding against the party with the burden of proof. *Smith v. King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986).

¶33 The employer's motive for discharging the employee is the dispositive finding of fact in a retaliation case. *Hill*, 144 Wn.2d at 186. Ms. Barker says this is a conclusion of law. It is not. And the court's finding that the investigation was incompetent and incomplete can be reconciled with the finding that ASIMI nevertheless accepted the results and sincerely believed Ms. Barker was guilty of telephone hacking. And, of course, resolving conflicts in the evidence is the prerogative of the trier of fact. *State v. Allen*, 116 Wn. App. 454, 466, 66 P.3d 653 (2003).

¶34 Ms. Barker reads too much into our holding in *Renz*. Evidence that an employer's reasons for a disputed employment decision are "unworthy of belief" gets the case to a trier of fact. It does not require judgment as a matter of law. *Renz*, 114 Wn. App. at 614. The fact finder is free to believe even the employer's improbable account. That is what happened here.

¶35 Ms. Barker contends that good faith is not a defense. But good faith is certainly an issue for the trier of fact in the retaliatory discharge case. *Yuille v. State*, 111 Wn. App. 527, 533, 45 P.3d 1107 (2002). She had to persuade the finder of fact that a retaliatory motive was at least a substantial factor in her discharge. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991). Here, the trier of fact found that retaliation was not a motive—in other words, that the employer acted in good faith. That is the end of our inquiry. *Phanna K. Xieng v. Peoples Nat'l Bank of Wash.*, 120 Wn.2d 512, 522, 844 P.2d 389 (1993) ("Once an employment discrimination case has been decided on the merits, any issues concerning the employer's burden merge into the ultimate disposition of the issue of discrimination made by the trier of fact.").

¶36 The authorities Ms. Barker cites on the good faith issue are not retaliation cases. They address primary discrimination that was conceded by the employer but nevertheless claimed as a business necessity based solely on the employer's unsupported belief. The cases hold that a factual showing of business necessity was required. In *Kastanis v. Education Employees Credit Union*, for example, two bank employees married. *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26, 865 P.2d 507 (1993). The woman was fired. She had to prove (1) that she was discriminated against based on her marital status and (2) that this discrimination was not justified by "business necessity." *Id.* at 493. The bank was not entitled to an instruction that its good faith belief in a nonexistent business necessity was a defense. *Id.* at 499. Likewise, in *Xieng*, an employee was denied a promotion because of his foreign accent. The evidence proved the accent did not impair his ability to do the job. The bank's belief that foreign accents were deleterious did not create a business necessity. *Xieng*, 120 Wn.2d at 515.

¶37 Retaliation is different. To prevail here, Ms. Barker had to overcome ASIMI's evidence that it sincerely believed its conduct was justified by the facts. Her burden was not merely to persuade the fact finder that the managers' belief in their investigation was poor judgment. She also had to convince the court that the alleged belief in the investigation was false. *Kastanis*, 122 Wn.2d at 499-500. To prevail in a bench trial, as distinct from surviving a summary judgment motion, Ms. Barker had to prove by a preponderance that ASIMI intentionally discriminated. *Id.* at 495.

¶38 The trier of fact agreed that the investigation did not logically support more than a suspicion of misconduct by Ms. Barker. The court was nevertheless persuaded by the direct and circumstantial evidence that the managers "sincerely—even if unjustifiably—believed" that Ms. Barker was the culprit. CP at 976 (Conclusion of Law 5). Ms. Barker "failed to establish by a preponderance of the evidence that ASIMI's decision to terminate her employment was moti-

vated in any respect by retaliation for her lawsuit." CP at 976 (Conclusion of Law 6).

¶39 These findings are supported by substantial evidence in the form of testimony that the managers sincerely believed their investigation proved Ms. Barker made the calls.

¶40 Ms. Barker relies on our decision in *Renz*. There, we reversed summary judgment for the employer, holding that the employee created a triable issue of fact with evidence that the employer's alleged reasons for the firing were "unworthy of belief." *Renz*, 114 Wn. App. at 619. Here, as in *Renz*, Ms. Barker contends, the trial court found that ASIMI's reasons for firing her were "unworthy of belief." She says that, as in *Renz*, the judgment for the employer here should likewise be reversed.

¶41 *Renz* and this case are procedurally and factually different, however. Both plaintiffs sued for sex discrimination and retaliatory discharge. The trial court summarily dismissed *all* of Ms. Renz's claims, and only the dismissal of the retaliatory discharge claim was appealed. *Renz*, 114 Wn. App. at 616-17. To create a triable fact issue on pretext in the retaliation claim, Ms. Renz had to make no more than a *prima facie* showing of the fact that she had previously *alleged* a hostile environment discrimination—not that it happened.

¶42 The trial court here found that the mere filing of a sex discrimination complaint was enough to create an issue of fact on pretext in her retaliation claim. And the court accordingly denied summary judgment on retaliation. To prevail on the sex discrimination claim, however, Ms. Barker had to produce some evidence that discrimination actually happened. In fact, she had to overcome the strong inference operating in favor of the employer that her supervisor's conduct and attitude toward her had not drastically changed since the previous year.

¶43 Ms. Barker also assigns error to various findings for which she offers no supporting argument. We do not

review such challenges. RAP 10.3(a)(5); *Huebner v. Sales Promotion Inc.*, 38 Wn. App. 66, 73, 684 P.2d 752 (1984).

¶44 That said, all the challenged findings are supported by testimony. And Ms. Barker does not deny that substantial evidence supports the findings. She contends only that the court's weighing of the evidence was faulty.

¶45 For example, finding of fact 32, that Ms. Barker was directly accused of misconduct, is supported by the testimony of Mr. Martinez that Ms. Barker was directly accused. Several other witnesses testified that Ms. Barker admitted, during the March 20 meeting, that years earlier she had improperly accessed the voice mail of Richard Green, a former manager. The judge believed the company's witnesses.

¶46 We affirm both the summary dismissal of Ms. Barker's claim of sex discrimination and the court's judgment following trial of her claim of retaliatory discharge.

KATO, C.J., and THOMPSON, J. PRO TEM., concur.

Review denied at 158 Wn.2d 1015 (2006).