156 P.3d 959 (2007)
Ryan BADDELEY and Holly Baddeley, a marital community, Appellants,
v.
Gregory SEEK, d/b/a Creative Rock Landscaping, and Gregory Seek and Roxanne Seek, a marital community, and Gulf Insurance Company, a Texas Corporation, Defendants,
STI Northwest, Inc., a Washington Corporation, and Paul T. Nelson, P.E., an individual, Respondents.
No. 25039-3-III.
Court of Appeals of Washington, Division 3.
May 1, 2007.
*960 Donna L. Beatty, Spokane, WA, for Appellants.
James Merle Thomas, Williams Kastner & Gibbs, Seattle, WA, for Respondents.
BROWN, J.
¶ 1 This retaining wall collapse dispute pits owners Ryan and Holly Baddeley against STI Northwest, Inc., an engineering firm hired by the Baddeleys' contractor, Gregory Seek, d/b/a Creative Rock Landscaping (CRL). The CRL-STI contract was formed after completion and before wall failure. The purpose was to aid the contractor in obtaining an overlooked building permit. STI opined that the wall appeared sound, and the contractor obtained the permit. The Baddeleys sued STI on various theories after the collapse. After the trial court dismissed the Baddeleys' negligence claim against STI, it entered a second order summarily dismissing the breach of contract, intentional misrepresentation, and negligent misrepresentation claims against STI. Judgment was granted for the contractor's bond. Then, the Baddeleys appealed the second order, mainly contending the court misapplied the economic loss rule.
¶ 2 Since the Baddeleys did not contract with STI, and are not third-party beneficiaries of the contractor-STI contract, they have no contract based claim. Thus, the economic loss rule has no part in this appeal. The Baddeleys also fail to establish the elements for intentional misrepresentation and negligent misrepresentation. Accordingly, we affirm.

FACTS
¶ 3 In May 2003, the Baddeleys contracted with CRL partly for a retaining wall. In September 2003, Wayne Hammond, the Chief Building Inspector for the City of Liberty Lake, saw the 15 foot high retaining wall for which he had not issued a building permit. He placed a stop work and do not occupy order on the site. Mr. Hammond told CRL it needed to submit plans and a report from a certified engineer in order to obtain a building permit. CRL contracted with STI to conduct a geotechnical evaluation to aid in getting the building permit.
¶ 4 In October 2003, STI submitted a report to CRL for a proposed plan based on information provided by CRL. Unsatisfied because the report did not match what he had seen, Mr. Hammond required tests. On November 3, 2003, Professional Engineer Paul T. Nelson submitted another report for STI to CRL to review the CRL design "and provide opinions regarding the adequacy of the construction." Clerk's Papers (CP) at 98. Mr. Nelson related an engineer had visited the site, and partly reported and opined:
At that time two pits were dug near the back of the reinforcement to verify its placement, spacing, and length. We observed that the geogrid had been placed at the proper elevations and spacing. We also visually verified the placement spacing by inspecting the face of the wall, where geogrid could be seen between the blocks at the appropriate levels. Visual inspection of the excavation sidewalls indicated very good compaction, as the sidewalls stood vertically.
Based on our design review and site visit, it is our opinion that the retaining wall was adequately designed and constructed. Since the wall has been standing for several months with no visible movement, it is our opinion that it will perform as anticipated in the long term.
CP at 98-99. Mr. Hammond issued the permit based on the report and Mr. Nelson's certification of the project.
¶ 5 The wall then failed, forcing dismantlement. Zan Munyan, a deconstruction worker, noticed minimal geogrid connected to the rounded corners, some unconnected geogrid, and geogrid on three wall sides placed in just one row. Mr. Munyan noticed "[n]o small pieces of geogrid were placed or inserted between blocks to make it appear to an observer looking at the face of the wall that geogrid was present." CP at 439.
*961 ¶ 6 The Baddeleys sued Mr. and Mrs. Seek, d/b/a CRL, their bonding company, Gulf Insurance, STI, and Mr. Nelson. The claims against STI were professional negligence, breach of contract damaging a third-party beneficiary, and negligent and/or intentional misrepresentation. The trial court first summarily dismissed the negligence claim against STI, and it later dismissed the remaining claims. The Baddeleys received judgment for the $6,000 bond, and then they appealed.

ANALYSIS

A. Intentional Misrepresentation
¶ 7 The issue is whether, considering the necessary elements, the trial court erred in summarily dismissing the Baddeleys' intentional misrepresentation claim.
¶ 8 We review summary judgment orders de novo.[1]Korslund v. DynCorp Tri-Cities Servs., 156 Wash.2d 168, 177, 125 P.3d 119 (2005). Summary judgment is appropriate when the facts and reasonable inferences, viewed in the light most favorable to the nonmoving party, establish no remaining genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. Once the moving party shows no genuine fact issue remains, the burden shifts to the non-moving party to raise a genuine issue of material fact. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 35, 109 P.3d 805 (2005). A fact is not reasonably disputed if a reasonable person could reach but one conclusion about the given facts, permitting summary judgment. Korslund, 156 Wash.2d at 177, 125 P.3d 119.
¶ 9 Like the trial court, we determine if the parties have met the burden of production. Barker v. Advanced Silicon Materials, L.L.C., 131 Wash.App. 616, 624, 158 Wash.2d 1015, 128 P.3d 633, review denied, 158 Wash.2d 1015, 149 P.3d 377 (2006). The burden of production prohibits us from weighing the credibility of witnesses or evaluating the persuasiveness of the evidence. Id. Deciding evidence persuasiveness is the jury's role. Id.
¶ 10 Many outside jurisdictions have held the economic loss rule does not bar fraud. See R. Joseph Barton, Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims, 41 WM. & MARY L.REV. 1789, 1830 (2000). A plaintiff may plead and prove all nine elements of fraud, or in the alternative, may show that the defendant breached an affirmative duty to disclose a material fact. Stiley v. Block, 130 Wash.2d 486, 515-16, 925 P.2d 194 (1996) (Talmadge, J., Concurring). The nine fraud elements are: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages. Baertschi v. Jordan, 68 Wash.2d 478, 482, 413 P.2d 657 (1966). The plaintiff must show every element by clear, cogent, and convincing evidence. Id. at 483, 413 P.2d 657.
¶ 11 Here, the record does not show STI intended the Baddeleys to act on any fact. STI rendered a professional opinion to CRL regarding the soundness of CRL's design and construction of the retaining wall. While opining STI merely reviewed the factors it considered in reaching its opinion. STI's opinion was given to CRL, and in turn to the building inspector to further CRL's effort to obtain a building permit. STI stated to Mr. Seek: "The purpose of the evaluation was to review the design and provide opinions regarding the adequacy of the construction." CP at 98. No evidence shows that STI gave the Baddeleys the opinion or that they were aware of the report until after its delivery to Mr. Seek and the building inspector. Thus, the Baddeleys fail to show the necessary intent element. Accordingly, the Baddeleys' intentional misrepresentation *962 claim must fail. Baertschi, 68 Wash.2d at 483, 413 P.2d 657.

B. Negligent Misrepresentation
¶ 12 The issue is whether the trial court erred in summarily dismissing the Baddeleys' negligent misrepresentation claim. Since no contract relationship exists between STI and the Baddeleys, the economic loss rule does not apply.
¶ 13 To establish negligent misrepresentation, a plaintiff must show by clear, cogent, and convincing evidence that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information. Lawyers Title Ins. Corp. v. Baik, 147 Wash.2d 536, 545, 55 P.3d 619 (2002); RESTATEMENT (SECOND) OF TORTS § 552(1) (1977). In addition, the plaintiff must show that the false information was the proximate cause of the claimed damages. Id.
¶ 14 This record does not show STI made any representations to the Baddeleys, that they knew about the CRL-STI contract, or that the Baddeleys justifiably relied on STI's information. In essence, the Baddeleys' negligent misrepresentation claim now appears to be an attempt to breathe new life into their professional negligence claim, which was dismissed and has not been appealed. In short, the Baddeleys fail to make a prima facie showing of negligent misrepresentation. Therefore, the trial court properly dismissed this claim and did not err.
¶ 15 Affirmed.
I CONCUR: KATO, J. Pro Tem.
SWEENEY, C.J. (dissenting).
¶ 16 The homeowners' claims here were dismissed on summary judgment. I conclude that the homeowners have made an adequate factual showing to support a legally cognizable claim for damages. Barker v. Advanced Silicon Materials, L.L.C., 131 Wash.App. 616, 623, 128 P.3d 633, review denied, 158 Wash.2d 1015, 149 P.3d 377 (2006); Richardson v. Denend, 59 Wash.App. 92, 95, 795 P.2d 1192 (1990). And I therefore respectfully dissent.
¶ 17 STI Northwest, Inc., had the burden of showing no genuine issue of material fact. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 35, 109 P.3d 805 (2005). We view the evidence here in a light most favorable to Ryan and Holly Baddeley. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). When so viewed this record shows that genuine issues of material fact remain on the Baddeleys' claims of intentional or negligent misrepresentation.
¶ 18 STI represented an existing fact: "[W]e observed that the geogrid had been placed at the proper elevations and spacing." Clerk's Papers (CP) at 98. "We also visually verified the placement spacing by inspecting the face of the wall, where geogrid could be seen between the blocks at the appropriate levels." CP at 98-99. They also offered a professional opinion that the wall was sound.
¶ 19 That fact was material. The placement of this geogrid is certainly important because "geogrid is an important element in the structure of a retaining wall as it allows the weight of the fill dirt to act as a securing mechanism for the retaining wall." CP at 438. The opinion was also materialthe information requested about the wall was requested in order to determine whether the wall was sound.
¶ 20 The Baddeleys are certainly entitled to the inference that STI knew those statements were false or was ignorant of whether the geogrid was present. Zan Munyan tore the wall down. He said there was minimal geogrid connected to the rounded corners. He said some of the geogrid was not connected to the wall at all. He said the geogrid on the side walls of the west portion of the wall was only placed in one row. And when the south wall was dismantled, he did not see any geogrid except in one row. The same was true for the north wall. There was no evidence of geogrid except in one row. Finally, and significantly for our purposes here, Mr. Munyan testified that "[n]o small pieces of geogrid were placed or inserted between blocks to make it appear to an observer looking at the face of the wall that geogrid was present." CP at 439. Therefore, arguably, *963 the facts represented by STI were actually false.
¶ 21 The record here also supports the Baddeleys' reliance. The purpose of the inspection was to conduct a "geotechnical evaluation . . . to assist Creative Rock Landscaping in designing the wall so that construction may commence," and that the wall was being constructed for a single family house. CP at 59. The Baddeleys owned that single family house.
¶ 22 The city building inspector relied on the representations of STI that the Baddeleys' wall was stable when issuing the permit. And the Baddeleys' contractor relied on the representations to secure that permit. STI employs licensed certified engineers. The Baddeleys as the homeowners had a right to rely on the representations as to the engineering soundness of their wall whether those representations were made to their building inspector or their contractor. Whether the Baddeleys reasonably relied on STI's recommendation is a question of fact. Barnes v. Cornerstone Invs., Inc., 54 Wash. App. 474, 478, 773 P.2d 884 (1989).
¶ 23 The Baddeleys also made out a case for negligent misrepresentation. STI, in the course of its profession, supplied false information. That information guided others in their business transactions. STI is, then, subject to liability for losses caused if it fails to exercise reasonable care in obtaining or communicating the information. W. Coast, Inc. v. Snohomish County, 112 Wash.App. 200, 209-10, 48 P.3d 997 (2002).
¶ 24 I also do not accept STI's argument that the Baddeleys can show no damage. The wall had to be dismantled and their back yard rebuilt. Whether or not they can recover those damages against their contractor is a question of fact. The contractor may be judgment proof or otherwise not subject to the legal process. If so, the Baddeleys are left holding the bag for the repair of construction which was conducted on STI's professional (though possibly fraudulent or negligent) recommendation. I would reverse and remand for trial.
NOTES
[1] STI's motion to dismiss was brought under CR 12(b)(6) and CR 56. Because the trial court considered evidence outside of the complaint in reaching its decision dismissal was pursuant to CR 56 and, thus, review will be under CR 56. Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 120-21, 744 P.2d 1032, 750 P.2d 254 (1987).