# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JAMES N. FOTINOS,<br><br>　　　　　　Appellant,<br><br>　　v.<br><br>CRAIG J. KALICH and JULIET D. KALICH, Husband and Wife, and COLDWELL BANKER KLINE AND ASSOCIATES, a Washington Corporation, and LOREN HOWARD, an individual,<br><br>　　　　　　Respondents. | No. 79074-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: October 21, 2019 |

APPELWICK, C.J. — Fotinos appeals from summary judgment dismissing his action on a residential real estate purchase and sale agreement. Fotinos did not timely file responses to the motions for summary judgment. His attorney attempted to file responses with the trial court at the hearing, citing personal hardship. The trial court did not accept them. Fotinos argues that the trial court erred in (1) granting respondents' summary judgment motions without considering his responses, (2) dismissing his fraudulent misrepresentation claim against the Kalichs, and (3) denying his motion for reconsideration. We affirm.

## FACTS

James Fotinos decided to sell his home in Oregon and move to Chehalis, Washington. In May 2015, Shannon Rogers, his former real estate broker, referred him to Martha Hunt, a real estate broker at Coldwell Banker Kline and Associates

in Centralia, Washington. Hunt acted as Fotinos's real estate broker and showed him about 20 homes in Chehalis. After returning to Oregon, Fotinos made an offer on a home owned by Craig and Juliet Kalich.

On May 28, 2015, Fotinos and the Kalichs entered into a purchase and sale agreement. Fotinos also signed acknowledging receipt of the Kalichs' seller disclosure statement. The purchase and sale agreement contained an inspection addendum, which conditioned the agreement on Fotinos's satisfaction with an inspection of the Kalichs' property and allowed Fotinos to request repairs before closing.

On June 1, 2015, Loren Howard inspected the property and prepared an inspection report for Fotinos. Fotinos testified that he never reviewed the report, but still decided to go ahead with the transaction based on telephone conservations he had with Hunt. After the inspection, Fotinos requested that the Kalichs replace an exterior window sill, replace cartridges in the front windows, repair a plumbing leak, and add splash blocks at all downspout locations. He also requested that the Kalichs install gutters and downspouts on the garage, and install a vent to allow air circulation in the access door to the hot water tank. The Kalichs completed those requests on June 6. The sale of the property closed on July 1, 2015.

On November 3, 2016, Fotinos filed an action against the Kalichs, Coldwell Banker, and Howard for (1) fraudulent misrepresentation, (2) breach of contract, (3) violations of the Consumer Protection Act, chapter 19.86 RCW, and (4) negligence. He alleged that all of the defendants knowingly and intentionally

2

concealed or failed to disclose their knowledge of various defects on the property. The following July, the Kalichs, Coldwell Banker, and Howard filed motions for summary judgment, and a hearing date on the motions was set for August 25, 2017.

Fotinos failed to timely file responses to the motions. On August 18, he moved to continue the August 25 hearing. The trial court denied his request, but the parties agreed to extend the deadline for Fotinos's responses to Tuesday, August 22.

At the start of the August 25 hearing, Fotinos still had not filed his responses. During the hearing, he handed his responses to the trial court "for filing." The trial court did not consider the responses and granted the motions for summary judgment. Fotinos then filed a motion for reconsideration, which the trial court denied. Fotinos appeals.

## DISCUSSION

Fotinos makes three arguments. First, he argues that the trial court erred in granting respondents' motions for summary judgment without considering his responses. Second, he argues that the trial court erred in dismissing his fraudulent misrepresentation claim against the Kalichs.[1] Third, he argues that the trial court abused its discretion in denying his motion for reconsideration.

---

[1] Fotinos assigns error to the trial court's dismissal of his "negligent misrepresentation" claim against the Kalichs. But, Fotinos made a fraudulent misrepresentation claim in his complaint. And, he refers to the claim as a "fraudulent misrepresentation" claim elsewhere in his brief. Accordingly, we address the trial court's dismissal of his fraudulent misrepresentation claim, not a negligent misrepresentation claim.

3

I.    Timeliness of Appeal

As an initial matter, Coldwell Banker argues that Fotinos failed to timely file his notice of appeal, because he filed his motion for reconsideration one day late. Therefore, it argues that Fotinos's motion did not extend the 30 day appeal period past September 24, 2017. Fotinos filed his notice of appeal on September 29, 2017.

Lewis County Local Rule 7(A)(5) and CR 59(b) require that motions for reconsideration be filed within 10 days after entry of a judgment or order. Fotinos filed his motion for reconsideration on September 5, 2017, 11 days after the August 25, 2017 orders granting summary judgment. But, the September 4, 2017 filing deadline fell on Labor Day, a legal holiday. RCW 1.16.050(1)(g). Because the deadline fell on a holiday, the period for him to file a motion for reconsideration ran until the end of the next day, September 5. CR 6(a). Thus, Fotinos timely filed his motion for reconsideration, which extended the 30 day appeal period past September 24, 2017. See RAP 5.2(e). Accordingly, Fotinos timely appealed.

II.    Motions for Summary Judgment

A. Responses

Fotinos argues that the trial court erred in granting respondents' three motions for summary judgment without considering or striking the responses he filed on August 25, 2017. Alternatively, he argues that if the trial court did strike his responses from the record, its decision rested on untenable grounds and was manifestly unreasonable.

At the start of the August 25, 2017 hearing on respondents' summary judgment motions, Fotinos still had not filed his three responses. He had e-mailed his response to Coldwell Banker two days prior, and had e-mailed his responses to Howard and the Kalichs the day before. During the hearing, he gave the trial court copies of his responses "for filing." The trial court did not consider Fotinos's responses in granting respondents' three motions. It stated, "I'm going to grant the motions for summary judgment. And I really don't have any choice in this matter. The rules are very clear; and despite those rules, you were given additional time and still [did] not give any response." The filing date on Fotinos's responses is August 25, 2017.

Fotinos argues that the trial court "had a duty to make a discretionary decision regarding [p]laintiff's responsive pleadings, which remained a part of the [c]ourt's record when [it] granted the motions for summary judgment." Because it did not, he contends that this court should consider his responses on review.

A judge may permit papers to be filed with him or her under CR 5(e). On review of an order granting summary judgment, we consider only the evidence called to the attention of the trial court. RAP 9.12. The order granting or denying a summary judgment motion must designate the documents and other evidence called to the court's attention. Id. The orders here do not list Fotinos's responses as something that the trial court considered.

Under RAP 9.12, there are only three ways for a document or evidentiary item to properly be made part of the record on review: (1) it may be designated in the order granting or denying the motion for summary judgment, (2) it may be

designated in a supplemental order of the trial court, or (3) counsel for all parties may stipulate that it was called to the attention of the trial court. Green v. Normandy Park Riviera Section Comty. Club, Inc., 137 Wn. App. 665, 679, 151 P.3d 1038 (2007). None of those things occurred to make Fotinos's responses a part of the record on appeal. Whether or not the trial court made an oral ruling on acceptance of the proffered pleadings is of no consequence. It is clear that the pleadings were called to the court's attention, and that the trial court exercised discretion by not accepting the pleadings or designating them in the order. As a result, they were not part of the record and the trial court did not have a duty to strike his responses. We do not consider them on review.

In the alternative, Fotinos argues that the trial court's decision to reject his responses rested on untenable grounds and was manifestly unreasonable. He argues that the trial court relied on the unsupported fact that he still had not filed responses, it applied the wrong legal standard,[2] and a reasonable person would have been accommodating.

A trial court may accept responses at any time prior to issuing its final order on summary judgment.[3] Brown v. Peoples Mortg. Co., 48 Wn. App. 554, 559, 739

---

[2] Specifically, Fotinos argues that the trial court was incorrect when it stated, "I really don't have any choice in this matter," because it applied a deadline to his responses without acknowledging its duty and authority to exercise discretion. Immediately before explaining that it did not have a choice, the trial court stated, "I'm going to grant the motions for summary judgment." In this context, it is clear that the trial court was referring to its decision to grant respondents' summary judgment motions, not its decision to reject Fotinos's responses. The trial court did, in fact, acknowledge its duty and authority to exercise discretion by determining that it would not consider his responses.

[3] Although this rule refers to affidavits, this court has applied it to responses to summary judgment motions. See, e.g., Davies v. Holy Family Hosp., 144 Wn.

P.2d 1188 (1987). But, "whether to accept or reject untimely filed [responses] lies within the trial court's discretion." Id. This court reviews a trial court's ruling on whether to accept or strike an untimely response for an abuse of discretion. Davies v. Holy Family Hosp., 144 Wn. App. 483, 499, 183 P.3d 283 (2008), abrogated on other grounds by Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 393 P.3d 776 (2017). "A trial court abuses its discretion only if its decision is manifestly unreasonable or rests upon untenable grounds or reasons." Id. at 497.

The respondents filed their motions for summary judgment on July 20 and 27, 2017, and the hearing was set for August 25, 2017. Under CR 56(c), Fotinos's responses were due by August 14, 11 days before the hearing date. Fotinos still had not filed his responses by August 16. On August 18, four days after he missed the deadline, he moved to continue the August 25 hearing.

At the hearing on Fotinos's motion for a continuance, Fotinos's attorney, stated that, after he came back from paternity leave, he could not respond to the motions in time. The trial court denied Fotinos's motion, but respondents agreed to accept Fotinos's late responses by Tuesday, August 22. Fotinos still had not filed his responses by the start of the August 25 summary judgment hearing. At the hearing, he handed copies of his responses to the trial court "for filing." He

---

App. 483, 500, 183 P.3d 283 (2008) (holding that the trial court did not abuse its discretion in denying Davies's motion to submit an untimely response when Davies failed to establish a basis for not complying with the time period in CR 56(c)), abrogated on other grounds by Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 393 P.3d 776 (2017); Idahosa v. King County, 113 Wn. App. 930, 937, 55 P.3d 657 (2002) (holding that the trial court did not abuse its discretion in refusing to accept Idahosa's untimely response based on "Idahosa's dilatory pattern, the lateness and size of the response, and a pending trial date less than two months away").

stated that "it was impossible" for him to get the responses done with the amount of time given, and that the trial court should have continued the hearing.

Fotinos argues that, in rejecting his responses, the trial court relied on the "unsupported fact" that he still had not filed them. (Emphasis omitted.) But, he did not file his responses in time for the hearing. Rather, during the hearing, he handed the trial court copies of his responses. Fotinos also argues that a "reasonable person . . . would have been accommodating." He cites no authority that the trial court had to do so. Accepting them would have been within the discretion of the trial court. But, Fotinos does not address why it would have been reasonable for the trial court to consider responses when not all of the moving parties had an opportunity to reply as provided under the court rules.[4] See CR 56(c).

Fotinos moved for a continuance on August 18, four days after his initial response deadline. The trial court denied his motion, but respondents agreed to accept his late responses by August 22. Despite agreeing to this extension, Fotinos failed to file any responses by that date. And, he filed nothing before the hearing three days later. Whether to accept or reject untimely responses lies within the trial court's discretion. See Brown, 48 Wn. App. at 559. In declining to consider Fotinos's responses, the trial court cited the substantial amount of time he had to respond, and his failure to meet his initial and extended deadlines. Accordingly,

---

[4] Counsel for the Kalichs stated that he had received an e-mail with Fotinos's response the night before, and that he had not had a chance to reply.

8

the trial court acted well within its discretion in declining to consider his untimely responses.

## B. Fraudulent Misrepresentation Claim

Even if we were to consider Fotinos's response to the Kalichs' summary judgment motion, his argument regarding their motion would fail. Fotinos contends that his fraudulent misrepresentation claim against the Kalichs should not have been dismissed, because the Kalichs "failed to raise any factual or legal arguments opposing it." In their motion, the Kalichs argued that Fotinos's lack of due diligence precluded his fraud claim. They relied primarily on Fotinos's deposition testimony and Howard's inspection report. The Kalichs' evidence also included their seller disclosure statement. Fotinos does not cite additional evidence in his response.

This court reviews summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Id. If a plaintiff, "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To prevail on a fraud claim, a plaintiff must prove by clear, cogent, and convincing evidence:

> (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

Baertschi v. Jordan, 68 Wn.2d 478, 482-83, 413 P.2d 657 (1966).

In the Kalichs' seller disclosure statement, they answered "no" to questions asking (1) if there were any defects with their hot water tank or heating and cooling systems, (2) if there had been any flooding, standing water, or drainage problems on the property that affected the property, and (3) if there was any material damage to the property from floods. The Kalichs answered "don't know" to questions asking (1) if any part of the property contained waste, (2) if there was any asbestos on the property, (3) if the property had been used for commercial or industrial purposes, and (4) if the property had been used as a legal or illegal dumping site. They did not answer a question asking if there were any defects with the garage floors and windows.

Howard inspected the property for Fotinos after Fotinos signed the Kalichs' seller disclosure statement, acknowledging his receipt of a copy. Howard reported "damaged beams present in the crawl space," "wood rot just inside the crawl space," and "visible moisture damaged trim." He also noted that "[t]here was water present on the garage floor northwest," and that the "garage gutters had improper pitch/standing water." And, he noted that "[t]he water heater compartment had

multiple screws and trim to remove for access. Recommend access be provided and reinspect."

In his complaint, Fotinos alleged that the Kalichs knew but affirmatively denied knowledge of the following material defects on the property:

[F]looding, standing water, and drainage in the garage and residence, waste buried in the property, material damage to the property caused by flooding, use of the property for commercial or industrial purposes, use of the property as a dumping site, and use of the property as a wrecking site.

He alleged that, prior to closing, fence installers discovered that "the property's land was filled with wrecking yard debris," including "engine parts, automobile machinery, chrome siding, wire, headlights, glass, and barbells." He also alleged that the Kalichs falsely and knowingly denied other material defects in their seller disclosure statement, including (1) a heating vent inside a cupboard, (2) asbestos materials, (3) separating roof shingles, (4) a lack of forced air or central heating, (5) a broken water heater, (6) flooding in the crawl space, (7) windows that did not fit together correctly, and (8) cracks in the garage foundation.

In their seller disclosure statement, the Kalichs did not deny that there were defects involving waste, asbestos, use of the property for commercial and industrial purposes, use of the property as a dumping site, separating roof shingles, windows that did not fit together, and cracks in the garage foundation. Instead, the Kalichs answered that they did not know whether defects involving waste, asbestos, use of the property for commercial and industrial purposes, and use of the property as a dumping site existed. Also, they did not answer the question about the garage floor and windows, and there were no questions about

roof shingles. Based on this evidence, there is no genuine dispute of material fact regarding the first element of fraud, a representation of an existing fact. And, even if the Kalichs had represented that those defects did not exist, there is no evidence in the record of their knowledge of those defects.

The Kalichs denied that there were defects involving the hot water tank, heating and cooling systems, flooding, standing water, drainage problems, and damage from flooding. But, in Howard's inspection report, he noted that there was damage in the crawl space, moisture damage, water present on the garage floor, standing water in the garage gutters, and no access to the water heater. He recommended repairing the crawl space, installing "splash blocks at all downspout locations," installing "gutters and/or downspouts on garage," and providing access to the water heater.

At his deposition, Fotinos stated that he "never got" Howard's report, and agreed that he "had an absolute right to a copy" of the report. He cited "[v]erbal telephone conservations with Martha Hunt" as his reason for still going ahead with the transaction. Fotinos was asked if he ever called Howard to say that he had not received a copy of the report. Fotinos responded, "It never even was thought of at that point in time. I had moved and I was busy unpacking."

In a fraud claim, a court's inquiry into a plaintiff's right to rely on a defendant's representation involves the "question of his diligence in ascertaining the facts for himself" and "his exercise of care and judgment in acting upon representations which run counter to knowledge within his possession or reach." Rummer v. Throop, 38 Wn.2d 624, 633, 231 P.2d 313 (1951). Howard's report

would have put Fotinos on notice of moisture damage, flooding, drainage problems, and his recommendation that access to the water heater be provided for reinspection. Based on this evidence, there is no genuine dispute of material fact regarding Fotinos's right to rely on the Kalichs' representations about those defects.[5]

Last, Howard did not report problems with the heating and cooling systems, including whether there was a heat vent inside of a cupboard, or whether there was no forced air or central heating. But, despite the Kalichs' denial that there were defects with the heating and cooling systems, there is no evidence in the record of their knowledge of those defects. Thus, there is no genuine dispute of material fact regarding the knowledge element of fraud.

The trial court did not err in dismissing Fotinos's fraudulent misrepresentation claim against the Kalichs on summary judgment.

III.    Motion for Reconsideration

Fotinos argues last that the trial court abused its discretion in denying his motion for reconsideration when he offered "a reasonable explanation" for not filing his responses on time. He relies on a declaration attached to the motion in which Fotinos's attorney provided details about his reasons for not timely filing Fotinos's responses. The declaration stated that on June 22, 2017, his pregnant wife was admitted to the hospital due to concerns about their unborn child. He was then in and out of the hospital for several weeks, until their child was born on July 14.

---

[5] And, even if Fotinos did have the right to rely on those representations, there is no evidence in the record of the Kalichs' knowledge of those defects.

13

When he returned to work in early August, he had overdue work from the three weeks preceding his child's birth, plus upcoming response deadlines for motions in several cases.

This court reviews an order denying a motion for reconsideration for an abuse of discretion. Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). Fotinos states that his three responses to respondents' summary judgment motions "were presented with" the motion for reconsideration, and that the trial court again rejected those responses. He argues that "a reasonable person would not have denied" his motion after his attorney provided information about his "medical emergency, ongoing hardship, and diligent effort to respond."

While the motion for reconsideration amplified the hardship Fotinos's attorney faced, those additional details were available at the time of the summary judgment. The trial court was aware of the hardship argument and the competing interests of the other parties, when it ruled on the summary judgment motion. The reconsideration motion changed nothing. Accordingly, the trial court did not abuse its discretion in denying Fotinos's motion for reconsideration.

IV.　Attorney Fees

　A. Fotinos

Fotinos requests attorney fees under RAP 18.1. He states that the purchase and sale agreement he entered with the Kalichs and the realtor agreement he entered with Coldwell Banker provide for litigation costs and

14

attorney fees to be awarded to the prevailing party.[6]  Because Fotinos does not prevail on appeal, we deny his request.

B. Coldwell Banker

Coldwell Banker requests attorney fees under RAP 18.1 and RAP 18.9(a), on the basis that Fotinos's appeal was untimely.[7]  Because Fotinos timely appealed, we deny its request.

We affirm.

_Appelwick, C.J._

WE CONCUR:

---

[6] Fotinos also states that if Howard had provided a preinspection agreement for his services, then that agreement would have provided that litigation costs and attorney fees be awarded to the prevailing party.  But, there is no preinspection agreement in the record.  Thus, Fotinos cannot seek attorney fees on that basis.

[7] Coldwell Banker also states that "Fotinos failed to submit a timely appellate brief."  Fotinos moved to file a reply brief about six months after the last response brief was filed.  But, this court denied his extension motion.  Because this court is not considering Fotinos's untimely reply brief, we decline to award Coldwell Banker attorney fees on the basis that Fotinos filed his reply brief late.