FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8:28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LANDSTAR INWAY, INC., | No. 43894-1-II |
| Appellant, | PUBLISHED OPINION |
| v. | |
| FRANK SAMROW and JANE DOE SAMROW and the marital community comprised thereof; | |
| Respondent, | |
| OASIS PILOT CAR SERVICE LLC; and CJ CAR PILOT, INC., | |
| Defendants. | |

BJORGEN, J. — Landstar Inway Inc. sued Frank Samrow and others over an accident involving a Landstar truck allegedly caused by the negligence of a pilot car operator dispatched through a limited liability corporation (LLC) of which Samrow was a member. Samrow sought and obtained summary judgment dismissing him from the lawsuit, arguing that he was shielded from liability as a member of the LLC. Landstar appeals this order and the denial of its motions to reconsider summary judgment and amend its complaint. Landstar argues that the trial court erred because material issues of fact remain as to whether Samrow was (1) personally liable for the LLC's obligations as one of its members under the doctrine of corporate disregard, (2)

personally liable as a partner in an unnamed partnership with the LLC, and (3) personally liable for his own tortious acts. Because genuine issues of fact remain about Samrow's personal liability under the doctrine of corporate disregard, we partially reverse the order for summary judgment and remand for further proceedings.

## FACTS

Washington is among the minority of states that do not require the road transportation of tall cargo loads on designated routes. Instead, Washington allows cargo carriers to select their own routes, so long as "pilot car" vehicles escort any tall cargo shipments. Where necessary to ensure that the load can safely travel beneath an overpass, a "pole car," a pilot car with a survey pole exceeding the height of the load attached to the front bumper, must precede the load. In theory, if the pole car can pass through without the pole striking the overpass, so may the cargo shipment. Regrettably, this theory may not always survive its passage through the real world.

In 2003, Samrow became a pilot car operator. For several years, Samrow offered his services in the form of his sole proprietorship, Blacksands Safety and Pilot Car Service. During these years, Samrow often worked with another pilot car operator, Terry Walker. The two of them occasionally provided pilot car services to Landstar.

In 2007, Samrow and Walker realized that they were receiving more offers for work than they could personally handle. They were referring the excess jobs to other contractors, but decided that they should receive payment for this service. This realization gave birth to Oasis Pilot Car Service LLC. Samrow testified that he and Walker never intended that Oasis would provide pilot car services, but would only dispatch other pilot car operators.

Samrow testified also that he and Walker decided to form Oasis as an LLC because "it would give [them] some protection." Clerk's Papers (CP) at 138. Samrow noted that he and Walker had tried to get insurance for the dispatching business, but no insurer would agree to provide them with a policy because, as a dispatcher, Oasis lacked any "direct link to the jobs." CP at 138. Even after Oasis's incorporation as an LLC, Samrow never successfully obtained insurance for the entity.

Under its business model, when a request for pilot car services came in, Oasis would offer the work to trusted pilot car operators and handle all the billing for the operator, taking 10 percent of the total fee for these services. Because they considered Oasis a dispatcher, both Samrow and Walker kept their sole proprietorships, and often did work referred by Oasis.

After Samrow and Walker formed Oasis, Landstar transferred its business to the new LLC. In July 2009, Landstar and related corporate entities signed two agreements with Oasis: a "Master Independent Contractor Agreement" (Agreement) and a "Route Survey Indemnity Addendum to Master Independent Contractor Agreement" (Addendum). Through the former, Oasis became one of Landstar's independent contractors providing pilot car services, although it had no obligation to accept every job Landstar offered. Through the latter, Oasis also agreed to provide route surveying services in conjunction with its pilot car services.

The Agreement laid out Oasis's obligations to Landstar. One of Oasis's primary duties was insuring Landstar against any loss it might cause. Part IV.B.1 of the Agreement required Oasis to maintain

> **Commercial Automobile Liability** insurance with a combined single limit for bodily injury and property damage of not less than ONE MILLION DOLLARS

($1,000,000) for each occurrence with respect to all vehicles owned, leased, hired, or assigned by Contractor to escort shipments on behalf of Companies. **Commercial General Liability** insurance coverage of not less than ONE HUNDRED THOUSAND DOLLARS ($100,000) per occurrence for personal property in the care, custody or control of Companies while such property is being escorted by Contractor. The Contractor[']s Automobile Liability and Commercial General Liability insurance policies must be endorsed to name the Companies as an additional insured for claims and liabilities arising out of the Contractor's work or services provided or performed under this Agreement.

CP at 103 (emphasis omitted). The Agreement required Oasis to prove it had "procured" and continued to "maintain[]" the required insurance. CP at 103. In the event that Oasis failed to "provide satisfactory proof of the liability insurance" required by the Agreement, Landstar reserved the right to purchase insurance at Oasis's expense. CP at 103. Oasis also agreed to

indemnify and hold harmless Companies and any and all motor carriers for whom Companies are providing transportation services from any and all claims, judgments, costs, expenses and losses (including attorneys' fees) by reason of any claim of damage or injury to person (including death) or property, including but not limited to damage or injury sustained by Companies, its employees, drivers, or customers, caused in whole or in part by the negligence, breach of contract, breach of warranty, or other fault or default on the part of Contractor or its employees or agents in the performance of, or pursuant to, its work under this Agreement.

CP at 104. The Addendum contained a similar indemnification clause.

The Agreement also contained a nonassignability clause that declared that "none of the rights or obligations attaching to either party hereunder shall be assignable." CP at 105. However, the Agreement did not specifically require that Samrow perform the contract on Oasis's behalf. In fact, in keeping with Oasis's status as an independent contractor, the Agreement gave Oasis sole discretion to determine how to perform its contractual duties. CP at 102 ("[Oasis] shall have complete control over the means and method of providing services required to be performed."). To give effect to this discretion, the Agreement speaks generally to

Oasis's agents and employees performing its contractual duties and no mention is made of any obligation for Samrow to personally provide the services.

Samrow signed the Agreement on behalf of Oasis using the title "Partner." CP at 106. The signature block where Samrow indicated his title contained Oasis's phone and federal tax numbers, as well as Oasis's e-mail address. Samrow later testified that he did not know whether there was a distinction between a partner and a member of an LLC.

When Landstar sought proof that Oasis had fulfilled its contractual obligation to procure and maintain the requisite insurance, Samrow provided it with the insurance policy for his personal vehicle, which listed Landstar as an additional insured. Samrow testified that he provided his personal insurance because Landstar employees told him that he could do so.

In October 2009 Landstar contracted to transport a tall load from British Columbia to the East Coast. One of Landstar's drivers called Oasis to alert it that he would need route survey and escort services through Washington. Samrow testified that he told the Landstar driver that "I couldn't handle the job" and that he gave the driver the name of Phil Kent, who provided pilot car services under the trade name CJ Car Pilot Inc. CP at 163-64. When Kent met the driver at the border, however, Kent was driving a vehicle marked with Oasis signs, and Oasis later billed Landstar for Kent's services.

When the two vehicles reached the New York Avenue overpass at milepost 124 on Interstate 5, Kent believed he passed successfully underneath. The Landstar cargo load, however, struck the bottom of the overpass, and, because of the speed at impact, scraped its way completely under it. Landstar eventually paid both the Washington Department of Transportation and the company owning the load for damages to the overpass and the cargo.

5

When Landstar tendered its indemnity claims to Samrow pursuant to the Agreement, Samrow's insurance company denied the claim because Samrow's policy covered his personal vehicle, which had not been used to escort the load. Landstar then tendered its indemnity claims to CJ Car Pilot and Kent. Kent's insurer also rejected the tender. Eventually, to recover its losses, Landstar sued Oasis, Samrow and his marital community, and CJ Car Pilot Inc., alleging three different causes of action: negligence, breach of contract, and breach of indemnity. Samrow moved for summary judgment dismissing him from the action, claiming that any liability ran to Oasis and not to him personally.

Just before the hearing on Samrow's summary judgment motion, Landstar moved for permission to file an amended complaint that sought to impose personal liability on Samrow for abuse of Oasis's corporate form in two ways. First, Landstar alleged that Samrow had used Oasis to evade a legal duty existing independently of the contract that required him to exercise reasonable care in the provision of pilot car services. Second, Landstar alleged that Samrow had fraudulently failed to disclose that Oasis was only a dispatcher, instead of a provider of pilot car services, and fraudulently represented his own insurance as Oasis's.

At the summary judgment hearing, the parties contested the theories of Samrow's individual liability found in both the original and amended complaints, despite the fact that the trial court had not yet granted leave to amend the complaint. Ultimately, the trial court granted the motion for summary judgment after determining that the facts did not justify disregarding the corporate form or imposing personal liability on Samrow.

Landstar moved for reconsideration, and the trial court consolidated the hearing on this motion with the hearing on the motion to amend Landstar's complaint. At the hearing, the trial

court first heard the motion for reconsideration because the order for summary judgment had

dismissed Samrow from the action, so Landstar could not amend its complaint unless the court

granted reconsideration. Landstar's arguments at the hearing were essentially the same as the

ones it had made at the summary judgment hearing: it contended Samrow was personally liable

under the independent duty doctrine and under the doctrine of corporate disregard. The trial

court rejected the motion for reconsideration, stating:

> The whole purpose of setting up corporations is to limit liability. So, to say that they did that to limit their liability, well, that's why most corporations are set up. LLCs are set up for that purpose, so I don't think that that, in and of itself, raises the issue of fact. The closest, I think, that the plaintiff gets to an issue of fact on whether there are material misrepresentations or fraud, quite frankly, because that's what you have to raise, an issue on those issues in order to raise an issue as to whether or not the Court should ultimately, as fact finder, pierce the corporate veil, is whether or not he's setting up a corporation just because he can't get insurance. I don't think that gets to raising an issue of fact on piercing the corporate veil; especially in light of the contract which was ultimately signed by the parties, the master contract which talks about, in essence, the responsibility being on, I think, both sides to ensure that there's insurance.
>
> I still think that my decision on summary judgment was accurate, correct, and I'm going to deny motion for reconsideration, which in turn means that the [motion to amend] is moot.

Verbatim Report of Proceedings (VRP) (June 22, 2012) at 17-18.

Landstar now appeals the trial court's orders granting summary judgment to Samrow and

denying its motions to amend its complaint and for reconsideration of the summary judgment

order.

## ANALYSIS

Landstar seeks reversal of the trial court's summary judgment order and the trial court's

denial of its motions to amend its complaint and for reconsideration for three reasons. First,

Landstar contends that Samrow's abuse of Oasis's corporate form justifies imposing its liabilities

on him as a member under either the doctrine of corporate disregard or the independent duty doctrine. Second, Landstar alleges Samrow bore liability for Oasis's negligence or breach of contract or indemnity because he signed the Agreement as a partner of Oasis. Finally, Landstar contends that Samrow is liable for his own tortious actions. We agree that material questions of fact remain with regard to the disregard of Oasis's corporate form. Consequently, we partially reverse the order for summary judgment.

## I. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a motion for summary judgment. *Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). Our review requires us to "perform[] the same inquiry as the trial court." *Kofmehl*, 177 Wn.2d at 594. We examine the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor, to determine if a genuine material issue of fact exists. *Kofmehl*, 177 Wn.2d at 594; CR 56(c). Summary judgment is appropriate where there is no material issue of fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

We review a trial court's decision regarding either a motion for reconsideration or a motion to amend a complaint for an abuse of discretion. *City of Longview v. Wallin*, 174 Wn. App. 763, 776, 301 P.3d 45, *review denied*, 178 Wn.2d 1020, 312 P.3d 650 (2013); *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 214, 304 P.3d 914, *review denied*, 178 Wn.2d 1022, 312 P.3d 651 (2013). A trial court abuses its discretion if its "'decision is manifestly unreasonable or based upon untenable grounds or reasons.'" *In re Marriage of*

No. 43894-1-II

*Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004) (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).  A trial court's

> "decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."

*Horner*, 151 Wn.2d at 894 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

## II. THE ISSUES BEFORE THE TRIAL COURT

One procedural matter requires discussion before turning to the merits of Landstar's appeal.  Technically, the corporate disregard and independent duty doctrine theories of Samrow's liability that Landstar urges here were not before the trial court during the summary judgment proceedings.  Landstar had only moved to amend its complaint to add these theories of liability a day before the summary judgment hearing, and the trial court had not granted the motion to amend.  However, the vast majority of the summary judgment hearing was devoted to discussion of corporate disregard and the independent duty doctrine.  The trial court ultimately rejected these theories on their merits at the summary judgment hearing.

We have recognized that parties may contest unpleaded claims by implication.  *Kirby v. City of Tacoma*, 124 Wn. App. 454, 471, 98 P.3d 827 (2004).  We look to the record as a whole to see if the parties have actually done so by contesting the issue, the evidence in the record, and the trial court's consideration of the legal and factual issues involved.  *See Kirby*, 124 Wn. App. at 471 (quoting *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 26, 974 P.2d 847 (1999)).  Here, the record contains extensive discussion of the corporate disregard and independent duty

doctrine issues and the evidence Landstar relies on to present these theories. The trial court ultimately denied Landstar's motion to amend its complaint after rejecting the merits of the claims Landstar wished to add. Analogizing *Kirby* to summary judgment proceedings, the parties contested the corporate disregard and independent duty doctrine claims, despite the fact that they were not formally before the court. Therefore, we consider them properly before us.[1]

### III. CORPORATE DISREGARD

Landstar first argues that summary judgment was inappropriate because material issues of fact remain concerning whether Oasis's corporate form should be disregarded in order to hold Samrow, as one of its members, individually liable. Specifically, Landstar alleges that material issues of fact remain as to whether Samrow (1) abused the corporate form through fraud and (2) abused the corporate form by using it to evade a legal duty he owed independently of the Agreement and addendum. We agree that material issues of fact remain about whether Samrow committed fraud that abused the corporate form. These issues of fact, consequently, preclude summary judgment dismissing Samrow from the suit. However, as discussed in Part III B, below, we disagree that material issues of fact remain about Samrow's liability under the independent duty doctrine and affirm the grant of summary judgment with respect to that theory of Samrow's personal liability.

An LLC "is a statutory business structure that is like a corporation in that members of the company are generally not personally liable for the debts or obligations of the company." *Chadwick Farms Owners Ass'n v. FHC, LLC*, 166 Wn.2d 178, 186-87, 207 P.3d 1251 (2009); *see* RCW 25.15.125(1), (2). However, just as the courts may disregard the separate existence of

---

[1] For his part, Samrow does not argue that the claims are not before us.

a corporation to impose personal liability on the corporation's shareholders, courts may disregard the LLC entity to impose personal liability on the LLC's members under certain circumstances. *Chadwick Farms*, 166 Wn.2d at 200; RCW 25.15.060. We employ the same test used to determine the propriety of piercing the veil of the corporate form to determine the propriety of piercing the veil of the LLC form to impose liability on LLC members. *Chadwick Farms*, 166 Wn.2d at 200; RCW 25.15.060.

Under this test, a plaintiff must prove the LLC form "was used to violate or evade a duty and that the LLC form must be disregarded to prevent loss to an innocent party." *Chadwick Farms*, 166 Wn.2d at 200. Establishing the first element requires the plaintiff to show "an abuse of the corporate form." *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410, 645 P.2d 689 (1982). Typically this involves some manner of "'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.'" *Meisel*, 97 Wn.2d at 410 (quoting *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 645, 618 P.2d 1017 (1980)). Establishing the second element requires the plaintiff to show that disregarding the corporate form is necessary to avoid the consequences of intentional misconduct harmful to the plaintiff. *Meisel*, 97 Wn.2d at 410.

A.    Fraud

Landstar first alleges that Samrow abused the corporate form by committing two different frauds.[2] First, Landstar alleges that Samrow fraudulently concealed the fact that Oasis

---

[2] As used in the cases concerning corporate disregard, fraud carries the broader meaning of "inequitable or unconscionable conduct" rather than the limited common law meaning of fraudulent misrepresentation. *Viewcrest Co-Op. Ass'n v. Deer*, 70 Wn.2d 290, 294, 422 P.2d 832 (1967); *see Meisel*, 97 Wn.2d at 410 (citing Thomas Harris, *Washington's Doctrine of Corporate Disregard*, 56 WASH. L. REV. 253, 260 n.38); *J.I. Case Credit Corp. v. Stark*, 64

dispatched pilot car operators instead of providing pilot car services of its own. Second, Landstar contends that Samrow fraudulently misrepresented his own insurance as Oasis's in order to satisfy Oasis's contractual obligation to provide coverage.[3]

To establish fraudulent misrepresentation, a plaintiff must prove nine elements: (1) representation of an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the speaker's intent that the listener rely on the false representation, (6) the listener's ignorance of its falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the representation, and (9) damage from reliance on the false representation. *Baertschi v. Jordan*, 68 Wn.2d 478, 482, 413 P.2d 657 (1966). An omission may constitute a misrepresentation if the plaintiff had a duty to disclose information and breached this duty. *Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 624-25, 393 P.2d 287 (1964); *Oates v. Taylor*, 31 Wn.2d 898, 903-04, 199 P.2d 924 (1949). A duty to disclose material information can arise in arm's-length contract negotiations because of the contractual duty of good faith. *Liebergesell v. Evans*, 93 Wn.2d 881, 891-94, 613 P.2d 1170 (1980); *Oates*, 31 Wn.2d at 904.

---

Wn.2d 470, 475-76, 392 P.2d 215 (1964) (quoting Charles Horowitz, *Disregarding the Entity of Private Corporations*, 14 WASH. L. REV. 285, 294 (1939)) (explaining that fraud within the meaning of corporate disregard is broader than fraud within the meaning of common law tortious conduct). Landstar does not avail itself of this wider meaning and contends that Samrow's conduct constituted common law fraud. Nonetheless, common law fraud does fall within the ambit of "fraud, misrepresentation, or . . . manipulation" and thus, if Landstar's allegations are true, suffices to allow a court to disregard the LLC form. *See Meisel*, 97 Wn.2d at 410.

[3] Landstar does not argue that Samrow's provision of his insurance on Oasis's behalf shows that he treated Oasis as his alter ego, and therefore abused the corporate form by not treating Oasis as a separate entity. *See Harris*, *supra*, at 253.

Samrow argues that we should not even reach the merits of Landstar's corporate disregard theory because Landstar failed to properly plead fraud according to CR 9(b). CR 9(b) obliges a plaintiff alleging fraud claims to plead the elements of fraud and the factual circumstances constituting the fraud or face dismissal of the complaint. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032, 750 P.2d 254 (1987). However, despite the nomenclature Landstar used in amending its complaint, corporate disregard is not a freestanding claim for relief. Corporate disregard is instead an equitable remedy that would allow the trial court to impose liability on Samrow for Oasis's negligence, breach of contract, or breach of indemnity. *See Truckweld*, 26 Wn. App. at 643.

There is no Washington case addressing whether a party must satisfy the pleading requirements of CR 9(b) in seeking to disregard a corporate form. The federal courts have, however, addressed the issue, and we may refer to these decisions as persuasive authority interpreting our analogous rules of procedure. *See Chapel Ridge Invs., LLC v. Petland Leaseholding Co.*, No. 1:13-cv–00146–PPS, 2013 WL 6331095, at *6 (N.D. Ind. Dec. 4, 2013) (collecting federal cases discussing the pleading requirements for corporate disregard claims); *Washburn v. City of Federal Way*, 178 Wn.2d 732, 750, 310 P.3d 1275 (2013) (citing *Beal v. City of Seattle*, 134 Wn.2d 769, 777, 954 P.2d 237 (1998)). Unfortunately, the federal courts have yet to reach a consensus on whether a plaintiff seeking to disregard the corporate form due to fraud must plead the fraud in accordance with the federal version of CR 9(b). *Chapel Ridge*, 2013 WL 6331095, at *6-7.

Those federal courts that decline to impose heightened pleading requirements in the context of corporate disregard do so because those pleading standards only apply to claims for ·

relief, not the relief itself. *See Taurus, IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 925 (W.D. Wis. 2007). These courts do not impose the pleading requirements of FRCP 9, because the federal courts treat corporate disregard as an equitable remedy, rather than an independent claim. *Taurus*, 519 F. Supp. 2d at 925; *see also* 18 AM. JUR. 2D *Corporations* § 47 (2004). This interpretation of CR 9 comports with both Washington's commitment to maintaining liberal pleading standards and its view of corporate disregard as an equitable remedy, not a claim for relief. *See, e.g., Putman v. Wenatchee Valley Med. Ctr.*, 166 Wn.2d 974, 983, 216 P.3d 374 (2009); *Truckweld*, 26 Wn. App. at 643. Based on these considerations, we follow those federal courts not requiring parties seeking to disregard the corporate form due to fraud to plead the fraud with particularity.

We turn now to the merits of Landstar's fraud allegation. Landstar introduced evidence that (1) it had done business with Samrow before the incorporation of Oasis, which might reasonably allow it to believe Oasis was a provider of pilot car services; (2) Oasis held itself out as a provider of pilot car services; (3) the language of the contract suggested that Landstar understood Oasis as a provider of pilot car services; (4) Samrow did not disclose that Oasis would not, as he had, directly provide pilot car services, but would only dispatch pilot car operators; (5) the contract required Oasis to procure insurance to cover its operations; and (6) Samrow provided his own insurance in the place of providing Oasis's to Landstar. For his part, Samrow introduced evidence that (1) he never considered Oasis anything other than a dispatcher and (2) he provided his personal insurance with Landstar's permission.

We hold that material issues of fact remain as to whether Samrow abused the corporate form. The first element of the test for corporate disregard is satisfied when recognizing the corporate entity would help accomplish a fraud:

> [n]ormally a corporate entity will be regarded unless [to do so] would help accomplish the breach of duty owing to the person who has dealt with the corporation. In exceptional cases, however, when the natural or artificial person sought to be held has so conducted himself or itself with respect to the person seeking relief that not to enforce the remedy for breach against that person would aid in the perpetration of a wrong as, for example, accomplishing a fraud, the corporate entity will be disregarded to prevent such a result.

*Soderberg Adver., Inc. v. Kent-Moore Corp.*, 11 Wn. App. 721, 732, 524 P.2d 1355 (1974).

The Supreme Court of Oregon, a state following the same principles of corporate disregard, Harris, *supra*, at 259, expressed a similar approach in its holding that

> "[i]t is well settled that, when corporate entity is used to accomplish fraud or injustice, the courts will disregard it, and will look through the corporate form to the real actor or actors in the transaction."

*Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 106, 654 P.2d 1092 (1982) (emphasis omitted) (quoting *Epton v. Moskee Inv. Co.*, 180 Or. 86, 93, 174 P.2d 418 (1946)).

A reasonable, although not necessary inference from the language of the contract and other evidence is that Landstar wanted Oasis's insurance, not Samrow's, and that Samrow fraudulently provided his own insurance to satisfy Oasis's obligations under the Agreement. Similarly, a reasonable fact finder could conclude that the prior course of dealing and the provision of Samrow's insurance led Landstar to reasonably conclude that Oasis would use Samrow's vehicle to provide the pilot car services called for by the Agreement and that Samrow did not disclose that would not be the case. This, in turn, could have led Landstar to believe the insurance Samrow provided would adequately protect it. Material issues of fact remain as to

whether Samrow committed fraud to satisfy Oasis's contractual duties and whether recognizing Oasis's corporate status helped accomplish that fraud. For this reason, the trial court erred in granting summary judgment.

We also hold that material issues of fact remain as to whether disregard of the corporate form is necessary to avoid an injustice. This portion of the test for corporate disregard focuses on the nexus between the abuse of the corporate form and the injury the plaintiff claims justifies the disregard of the corporate form. *See Meisel*, 97 Wn.2d at 410. As noted, Landstar has introduced evidence that would allow a reasonable fact finder to conclude that Samrow provided his insurance to satisfy Oasis's contractual obligations. Landstar has also introduced evidence that would allow a reasonable fact finder to conclude that Samrow's provision of insurance on Oasis's behalf prevented it from knowing it needed to purchase its own insurance. The fraud, if proven, would have led to Landstar's losses due to Oasis's breach of the provisions of the Agreement. Disregard of Oasis's LLC form to impose its liability on Samrow would therefore be necessary to avoid an injustice to Landstar arising from Samrow's abuse of that form. *See Chadwick Farms*, 166 Wn.2d at 200.

Samrow argues that Landstar should have realized that someone other than Samrow would escort its cargo because of provisions in the contract authorizing Oasis to use employees or agents to discharge its obligations, meaning that no fraud occurred. Samrow contends that Landstar should have viewed the provision of his insurance as a breach of the provision requiring Oasis to provide insurance and exercised its option to purchase coverage at Oasis's expense. Samrow's argument, however, misses Landstar's point and misstates the provisions of the Agreement. Landstar contends that Samrow passed off his own personal insurance information

as Oasis's, which precluded Landstar from exercising its contractual option to purchase insurance based on Oasis's failure to obtain coverage. If true, and if Landstar reasonably relied on this falsity and suffered damages in consequence, Samrow committed fraud. Again, a material issue of fact remains, and the trial court should have denied the motion for summary judgment.[4]

The trial court based its denial of Landstar's motion to reconsider on Samrow's argument about Landstar's failure to procure insurance. In making its ruling, the trial court mistakenly characterized the Agreement as placing on both parties the responsibility to obtain insurance. The terms of the contract required Oasis to procure insurance and only allowed Landstar to do so where Oasis breached this obligation. Because the trial court based its ruling on an erroneous reading of the record, it abused its discretion in denying the motion for reconsideration.

B.    Independent Duty Doctrine

Landstar also alleges that Samrow abused the corporate form by using Oasis to evade a legal duty to provide pilot car services in a reasonable manner that existed independently of the contract. To support its claim of an independent duty, Landstar cites WAC 468-38-100 and argues that this provision required Samrow to "operate the pilot car (or to ensure that the driver of the pilot car hired by Samrow operated the pilot car) with reasonable skill and judgment." Br. of Appellant at 17.

Tort law serves "society's interests in freedom from harm, with the goal of restoring the plaintiff to the position he or she was in prior to the defendant's harmful conduct." *Alejandre v. Bull*, 159 Wn.2d 674, 682, 153 P.3d 864 (2007). In contrast, contract law serves "society's

---

[4] On remand, the trial court will need to apply CR 15 to determine the propriety of allowing Landstar to amend its complaint to add the corporate disregard theory of Samrow's liability.

interest in performance of promises, with the goal of placing the plaintiff where he or she would be if the defendant had performed as promised." *Alejandre*, 159 Wn.2d at 682. Generally an injury will sound in either contract or tort, and the plaintiff must seek remedies appropriate to the injury. *See G.W. Constr. Corp. v. Prof'l Servs. Indus., Inc.*, 70 Wn. App. 360, 364, 853 P.2d 484 (1993). However, the independent duty doctrine recognizes that an injury may sound in both tort and contract law. Under the doctrine a party may pursue both contract and tort remedies if a breach of contract is simultaneously a "breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389, 241 P.3d 1256 (2010) (lead opinion by Fairhurst, J.).

We conclude that Samrow owed no independent duty under these facts. WAC 468-38-100 imposes detailed requirements on the operation of pilot cars, focusing on required equipment and the driver's duties in operating the vehicle. Among these are requirements that the pilot car driver notify the operator of the truck of overhead obstructions and that the pilot car have a height pole in certain circumstances. WAC 468-38-100(6), (14). Thus, the breach of any duty arising out of these provisions would be defined by the failure to provide pilot car services in accordance with their terms. Samrow, however, never provided pilot car services here, and we cannot say that he assumed any duty to act with ordinary care under WAC 468-38-100. Samrow could not use the corporate form to evade a duty he did not have.

Landstar also asks us to hold that Samrow owed a personal duty to provide pilot car services to Landstar under the Agreement. The Agreement provides no support for this

argument.[5] The Agreement gave Oasis the discretion to determine the manner in which it fulfilled its contractual duties. This discretion encompassed using employees or agents to perform the required tasks; none of this spoke to a requirement that Samrow provide the services himself. Further, Landstar is blurring contract and tort duties in its argument. There is no general duty requiring individuals in Samrow's position to provide pilot car services and no tort related to breach of this duty.

As to Landstar's claim that Samrow owed a duty to ensure that Oasis discharged any duty imposed by WAC 469-38-100, this appears to be an argument that any duty under the WAC provision was nondelegable. Tort and agency law recognize that principals may not delegate the compliance with statutory duties to their agents. *Carabba v. Anacortes Sch. Dist. No. 103*, 72 Wn.2d 939, 957-58, 435 P.2d 936 (1968) (citing RESTATEMENT (SECOND) OF AGENCY § 214); *Millican v. N.A. Dagerstrom, Inc.*, 177 Wn. App. 881, 890-91, 313 P.3d 1215 (2013), *review denied*, --- Wn.2d ---, --- P.3d ---- (2014). If anything, Kent was either Oasis's agent or its apparent agent, not Samrow's, so any duty ran to Oasis, not Samrow. We find no basis for imputing Kent's liability to Samrow under theories of nondelegation.

Landstar argues finally that it would be unjust to allow Samrow to escape liability for Oasis's breach of a nondelegable duty because doing so would amount to an abuse of the corporate form. Landstar's argument reduces to a claim that Samrow and Walker could not incorporate and operate Oasis as an LLC because doing so limited their liability. We long ago rejected this argument. As with all American jurisdictions, Washington's law allows the use of

---

[5] Landstar alleges that it contracted with Oasis specifically to obtain the expertise of Samrow. The record, however, contains no evidence of this.

the corporate form specifically to allow individuals to limit their liability. *See Truckweld*, 26 Wn. App. at 644-45. Absent some kind of fraud or abuse of the corporate form, we respect the LLC's separate existence, and the choice to limit liability through incorporation is not, by itself, such an abuse of the corporate form. *Truckweld*, 26 Wn. App. at 644-45.

## IV. PARTNERSHIP LIABILITY

Landstar also argues that summary judgment was inappropriate because material issues of fact remain as to Samrow's liability because he signed the Agreement and Addendum as a partner with Oasis, making him liable for the partnership's debts. As noted above, summary judgment is proper only where no material issue of fact remains, entitling a party to judgment as a matter of law. Again, we draw all reasonable inferences in favor of the nonmoving party. When these reasonable inferences create material issues of fact, summary judgment is inappropriate. *Kofmehl*, 177 Wn.2d at 594. In contrast, where a party asks us to draw an unreasonable inference, the inference does not create a material issue of fact and summary judgment is appropriate. *Lynn v. Labor Ready, Inc.*, 136 Wn. App. 295, 310-11, 151 P.3d 201 (2006); *Marshall v. AC&S Inc.*, 56 Wn. App. 181, 184-85, 782 P.2d 1107 (1989).

If Landstar is suggesting that Samrow's use of the title "Partner" effectively converted the LLC into a partnership, its position cannot be sustained. Nothing in the terms or purposes of applicable statutes suggests that the protections of an LLC are lost by signing as a partner instead of a member.

We take Landstar's position, instead, to be that Samrow's signature as a partner showed that he had entered into an unnamed separate partnership with Oasis. We agree that if Samrow had entered into such a partnership, he could be personally liable for the partnership's debts

under RCW 25.05.125(1). However, the inference of an unnamed partnership was unreasonable, and the trial court properly declined to deny summary judgment on the basis of that unreasonable inference. As Samrow argues, the Agreement and Addendum disclose no intent on Landstar's part to contract with a third entity, a partnership between Samrow and Oasis, to obtain Oasis's services. All of the provisions of the Agreement and Addendum speak only of a contractual relationship between Oasis and Landstar. Further, the signature block on the Agreement and Addendum lists Oasis's address, e-mail address, and federal tax identification number. This information indicates that Samrow was signing on behalf of Oasis, but that he simply used the wrong title to do so. Samrow's deposition confirms this understanding of the information in the signature block on the Agreement and Addendum: he testified that he did not know that incorporation as an LLC transformed him and Walker from "partners" into "members." *See* CP at 161.

## V. SAMROW'S PERSONAL LIABILITY

Finally, Landstar contends that the trial court erred in granting Samrow summary judgment because material issues of fact remain about Samrow's liability for his own tortious acts. In support, Landstar simply repeats its allegations that Samrow committed the common law tort of fraud with certain representations he implicitly or explicitly made to it.[6]

---

[6] At oral argument, Landstar also alleged that material issues of fact remained about Samrow's negligence in picking the route used by Kent. Landstar did not assign error to the trial court's grant of summary judgment in this regard, and, although it made argument in this respect before the trial court, it provided no argument as to any error in its appellate briefs. The issue is not properly before us and we decline to address it. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 537-38, 954 P.2d 290 (1998); RAP 10.3(a)(6).

Landstar presents Samrow's fraudulent statements here as an independent tort claim, rather than as a means to relief, as it did in seeking corporate disregard as a remedy. CR 9(b) does apply where the party sets out a claim for fraud. Under CR 9(b), Landstar needed to affirmatively plead the nine elements of fraud in its amended complaint or face its dismissal. *Haberman*, 109 Wn.2d at 165; *Schreiner Farms, Inc. v. Am. Tower, Inc.*, 173 Wn. App. 154, 163, 293 P.3d 407 (2013). Neither Landstar's complaint nor its amended complaint pleads the elements of fraud as required by CR 9(b). Because Landstar's pleading failed to satisfy the requirements of CR 9(b), we cannot address the merits of its claim. Summary judgment in Samrow's favor was appropriate as to this theory of Samrow's liability.

## CONCLUSION

We partially reverse the summary judgment order dismissing Samrow from Landstar's suit, because material issues of fact remain about whether Samrow abused the corporate form by committing fraud; and we remand to the trial court. If the finder of fact determines that Samrow abused the corporate form in this way, consistently with Part II. A. of the Analysis above, the trial court may disregard Oasis's LLC form in imposing any liability for that fraud.

BJORGEN, J.

We concur:

WORSWICK, C.J.

JOHANSON, J.

22