IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARGARET L. CURTIS, individually and as Personal Representative of the Estate of Allen L. Curtis, | No. 78248-7-I (Consolidated with No. 78405-6 and No. 78340-8) |
| Respondent/Cross-Appellant, | |
| v. | DIVISION ONE |
| VLADAN R. MILOSAVLJEVIC, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent, | |
| LARI-ANNE MILOSAVLJEVIC, HIDDEN CREEK II, LLC, ROCK & SHIELD, LLC, MEADOWDALE MARINA, LLC, and ICARUS HOLDING, LLC, | |
| Defendants. | FILED: October 14, 2019 |

CHUN, J. — The trial court concluded Vladan Milosavljevic owed

$1,268,528.16 on a $1.4 million loan obligation to Margaret Curtis and the Estate

of Allen Curtis (collectively, Curtis). In arriving at the figure, the court applied

offsets against the debt for (1) Milosavljevic's conveyance of a property to Hidden

Creek II, LLC, of which the Curtises were the sole members, and (2) his

subsequent expenditures incurred in developing the property.

On appeal, Milosavljevic argues the limitations period on the loan

agreement claim expired prior to suit and, in the alternative, that he should have

received credit against the loan obligation for his personal services rendered in

developing the property. Milosavljevic also argues the trial court erred in its computation of the credits.

Curtis cross-appeals, arguing the trial court should not have applied offsets against the loan obligation because the transfer and expenditures solely benefited Hidden Creek, and no legal basis exists for veil-piercing. Curtis also asserts that, under a previously discharged bankruptcy plan, Milosavljevic already owed a deed of trust on the transferred property; hence, Curtis argues, this constitutes another reason why the trial court should not have applied an offset for the transfer. Finally, Curtis claims the trial court erred in denying interest on a $239,404.80 payment by Milosavljevic, which he owed under his bankruptcy plan.

We affirm the trial court's determination that a six-year statute of limitations governs the loan agreement. But because Milosavljevic's transfer of property and expenditures benefitted Hidden Creek—and no basis exists for veil-piercing—we reverse the trial court's application of offsets to the debt. Additionally, we affirm the trial court's conclusion that Milosavljevic does not owe interest on the $239,404.80 payment. Because of the discharge of Milosavljevic's bankruptcy plan, the payment qualifies as voluntary.

## I. BACKGROUND

On February 18, 2010, Milosavljevic filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington. Allen and Margaret Curtis filed a claim for $3,259,615.59 in the case.[1]

---

[1] A prior loan agreement, not at issue in this case, formed the basis for this claim.

2

The terms of the bankruptcy plan provided for the Curtises to receive the balance of a settlement payment due to Milosavljevic and a deed of trust on certain property in Bothell (Kenmore parcel). In addition, the Bankruptcy Court held $248,214.76 for potential claims the IRS may have against Milosavljevic. The Bankruptcy Court expected that the IRS would find Milosavljevic owed no tax during the period relevant to bankruptcy, and ordered that in the event these held funds exceeded the IRS claim, the remainder be disbursed to the Curtises. On September 16, 2011, the Curtises received partial payment of their bankruptcy claim in the amount of $1,401,155.14; but Milosavljevic never granted the deed of trust on the Kenmore parcel.

The Curtises made a new loan of $1.4 million to Milosavljevic. On October 3, 2011, Milosavljevic and the Curtises entered into a written loan agreement providing as follows:

> LOAN AGREEMENT b/n VLADAN MILOSAVLJECIV [sic] & ALLEN and MARGARET CURTIS
>
> I, VLADAN MILOSAVLJEVIC, will pay ALLEN AND MARGARET CURTIS, our loan of $1,400,000.00 (one million-four hundred-00 dollars)
>
> My personal guarantee, is [the Kenmore parcel]
>
> [Signed by Milosavljevic and the Curtises.]

On February 13, 2012, the IRS amended its claim to $0.00, and the Bankruptcy Court ordered that the $248,214.76 held in its registry be released to Milosavljevic's counsel. The Bankruptcy Court directed Milosavljevic's counsel to disburse some of the funds to himself and the United States Trustee's office, and the balance of the funds–$239,404.80–to the Curtises. On April 10, 2012,

3

Milosavljevic withdrew the funds in cash but did not transfer the proceeds to the Curtises. Milosavljevic's counsel, however, reported to the Bankruptcy Court that payment had been made to the Curtises pursuant to the terms of the chapter 11 plan. On April 20, 2012, the Bankruptcy Court entered an Order Discharging Debtors and Final Decree Closing Case for the plan ("Order of Discharge").

On March 12, 2013, Milosavljevic formed Hidden Creek, a limited liability company, designating himself as the manager and the Curtises as the only members. On March 14, 2013, Milosavljevic conveyed the Kenmore parcel to Hidden Creek; the property's value amounted to $550,000 at the time of transfer. After the transfer, Milosavljevic worked to improve the property and incurred $434,526.96 in out-of-pocket expenses in doing so. Milosavljevic also claimed at trial to have worked over 2,000 hours to develop the Kenmore parcel.

Allen Curtis died on December 31, 2015. Margaret Curtis, his wife, serves as the personal representative of his estate. According to Milosavljevic, after Allen Curtis's death, Margaret Curtis encouraged him to continue development of the Kenmore parcel and ready it for sale. On February 8, 2017, Curtis filed a complaint against Milosavljevic seeking, among other claims, recovery of the loaned $1.4 million.

Milosavljevic paid $239,404.80 to Curtis on May 1, 2017.

On October 27, 2017, Curtis moved for summary judgment. In response, Milosavljevic argued that the three-year limitations period of RCW 4.16.080 barred the suit. On December 1, 2017, the trial court denied Curtis's motion. On December 8, 2017, Curtis moved for reconsideration, requesting either summary

4

judgment on the note or partial summary judgment on Milosavljevic's affirmative defenses, including his statute of limitations defense. In an order reconsidering its denial of Curtis's summary judgment motion, the trial court granted partial summary judgment and struck the statute of limitations defense. It concluded that, whether analyzed as a negotiable instrument under RCW 62A.3-104 or as a written contract, the six-year limitations period applied to the loan agreement.

The matter proceeded to a bench trial in 2018. In its Findings of Fact and Conclusions of Law, the trial court concluded that Milosavljevic owed payment under the loan agreement, but applied offsets for (1) Milosavljevic's conveyance of the Kenmore parcel to Hidden Creek, and (2) his out-of-pocket expenses incurred in developing the property. After its computation of this sum, the court concluded Milosavljevic owed $976,235.46 in principal and $292,292.71 in prejudgment interest, applying the transfer and expenditures first to accrued interest and then to principal.[2] In addition, the trial court concluded the Order of Discharge discharged all of Milosavljevic's obligations under the Chapter 11 plan, rendering the $239,404.80 payment voluntary with no interest owing. Both sides appeal.

---

[2] In its Findings of Fact and Conclusions of Law, the trial court stated that Milosavljevic owed $974,094.07 in principal and $291,443.70 in pre-judgment interest, "As calculated in Attachment A." These figures appear to be in error, as they differ from the calculations in Attachment A and those in the trial court's Judgment. The parties appear to agree that, under the judgment, Milosavljevic owes $976,235.46 in principal and $292,292.71 in interest.

## II. ANALYSIS

### A. Appeal from Order Granting Reconsideration of Denial of Summary Judgment

Milosavljevic argues that the trial court erroneously concluded that a six-year limitations period governs the parties' loan agreement. He contends that the three-year statute of limitations, RCW 4.16.080(3), applies to the agreement, which he characterizes as a partially integrated contract.[3] Curtis argues the trial court properly concluded otherwise.[4] We agree with Curtis.

We review de novo an order granting summary judgment and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). "Summary judgment is available only if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Bogle and Gates, PLLC v. Holly Mountain Res., 108 Wn. App. 557, 560, 32 P.3d 1002 (2001). We will not reverse a court's ruling on reconsideration absent a showing of manifest abuse of discretion. Hook v. Lincoln County. Noxious Weed Control Bd., 166 Wn. App. 145, 158, 269 P.3d 1056 (2012). "A trial court abuses discretion when

---

[3] RCW 4.16.080: "The following actions shall be commenced within three years: . . . (3) Except as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument[.]"

[4] As an alternative basis for concluding the six-year limitations period governed the loan agreement, the trial court determined the loan agreement constituted a negotiable instrument as defined by RCW 62A.3-104. On appeal, Milosavljevic argues the court erred in reaching this finding; Curtis concedes error is likely. Because we ultimately conclude the trial court properly determined the loan agreement is governed by a six-year statute of limitations as a contract in writing, we decline to examine whether the loan agreement may also be a negotiable instrument.

6

its decision is based on untenable grounds or reasons." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

"A written agreement for purposes of [RCW 4.16.040(1)'s six-year] limitation period must contain all essential elements of the contract, which include the subject matter, parties, terms and conditions, and price or consideration." Urban Dev., Inc. v. Evergreen Bldg. Prods. LLC, 114 Wn. App. 639, 650, 59 P.3d 112 (2002). Additionally, "a borrower's promise to repay loaned funds is . . . an essential element of a loan agreement." Nat'l Bank of Commerce of Seattle v. Preston, 16 Wn. App. 678, 680, 558 P.2d 1372 (1977). But "if resort to parol evidence is necessary to establish any material element then the contract is partly oral and the 3-year statute of limitations applies." Nat'l Bank of Commerce of Seattle, 16 Wn. App. at 679. To decide whether an agreement is written, or partly oral and partly in writing, a court must consider "all relevant, extrinsic evidence, either oral or written . . . . That is a question of fact." Barber v. Rochester, 52 Wn.2d 691, 698, 328 P.2d 711 (1958). If the loan agreement contains all essential elements, then it constitutes a written agreement subject to a six-year statute of limitations.

We review only the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits available to the trial court at the time of decision to determine whether the loan agreement was a contract in writing. See Bogle & Gates, PLLC, 108 Wn. App. at 560. In addition, because the order of reconsideration effectively granted partial summary judgment on Milosavljevic's

7

statute of limitations defense, we draw all reasonable inferences in his favor. See Bogle & Gates, PLLC, 108 Wn. App. at 560.

The loan agreement includes the essential elements of the subject matter, parties, consideration, and promise to repay loaned funds: Milosavljevic promised to repay $1.4 million in loaned funds back to the Curtises.[5] RCW 9.52.010 supplies the interest rate for the agreement.[6]

Milosavljevic contends that one must resort to extrinsic evidence to understand additional and essential terms and conditions of the agreement; namely, that Milosavljevic was to use some of the funds to develop the Kenmore parcel, that the parties planned to share in the profits of the development of the Kenmore parcel, and his belief that by conveying the Kenmore parcel to the Curtises he satisfied his debt to them. But the evidence available to the trial court at reconsideration does not show that these were essential elements of the loan agreement.[7]

At the stage of the motion for reconsideration and summary judgment, Milosavljevic failed to raise a genuine issue of fact as to whether the loan agreement was a contract in writing. Thus, the trial court did not err in concluding that a six-year limitations period applied to the loan agreement.

---

[5] "I, VLADAN MILOSAVLJEVIC, will pay ALLEN AND MARGARET CURTIS, our loan of $1,400,000 (one million-four hundred-00 dollars)." Milosavljevic's argues that the meanings of "will pay" and "our loan" are ambiguous. His argument is unpersuasive.

[6] RCW 19.52.010 supplies a 12 percent interest rate "where no different rate is agreed to in writing between the parties."

[7] Milosavljevic points to testimonial evidence from the trial as a means of establishing that not all essential elements of the loan agreement were in writing. His assignment of error, however, is to the pretrial ruling. Thus, we do not consider this evidence in reaching our conclusion.

B. Appeal from Trial

"Where the trial court has weighed the evidence, our review is limited to ascertaining whether the findings of fact are supported by substantial evidence and, if so, whether the findings support the conclusions of law and the judgment." Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). We review de novo questions and conclusions of law. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

1. Loan Agreement Offsets

Milosavljevic argues the trial court properly applied offsets against the loan obligation for his transfer of the Kenmore parcel to Hidden Creek and his expenditures in developing the property, but that the trial court improperly denied offsets for his personal services in developing the property. Curtis argues no offsets can be properly applied because Milosavljevic's transfer, expenditures, and services benefitted Hidden Creek, and not the Curtises. We conclude that the trial court improperly applied offsets against the loan obligation.

Here, under the loan agreement, Milosavljevic owed an amount to the Curtises. Milosavljevic's expenditures, personal services, and conveyance of the Kenmore parcel, however, benefitted Hidden Creek. The LLC form protects its members from personal liability on the LLC's obligations. RCW 25.15.126. As such, the Curtises could not be personally liable to Milosavljevic with respect to benefit he conferred upon Hidden Creek. The liabilities in question were not between the same parties, indicating they could not be properly offset against

9

each other. Cf. Johnson v. California-Washington Timber Co., 161 Wn. 96, 103, 296 P. 159 (1931) (separate liabilities between the same parties may be offset).

Notwithstanding the foregoing, the trial court applied offsets against the loan obligation for Milosavljevic's expenditures and conveyance of the Kenmore parcel to Hidden Creek. It is unclear under what theory the trial court did so. Disregard of the LLC form appears to be the most likely justification.[8] Cf. In re Rapid Settlements, Ltd.'s Application for Approval of Transfer of Structured Settlement Payment Rights, 166 Wn. App. 683, 691-695, 271 P.3d 925 (2012) (allowing offset despite no mutuality of obligation because veil-piercing was justified).

A court "may disregard the LLC entity to impose personal liability on the LLC's members." Landstar Inway, Inc. v. Samrow, 181 Wn. App. 109, 123, 325 P.3d 327 (2014). In doing so, the court applies the same test as is used to pierce the corporate form and apply liability on a corporation's shareholders. Landstar Inway, 181 Wn. App. at 123; RCW 25.15.061. A court may disregard the LLC form and impose liability on its members in circumstances where (1) the LLC form is used intentionally to violate or evade a duty, and (2) disregard is necessary and required to prevent unjustified loss to the injured party. Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410, 645 P.2d 689 (1982). A

---

[8] The trial court's oral ruling provides:
With regards to the LLC, however, the court cannot ignore that the Curtises are the people who benefit from that transfer to the LLC. They are the only principal agents of the LLC, and the court would find that at least the LLC was an agent of the Curtises' and the receipt of that conveyance was in payment for the – for that loan.
3 Report of Proceeding at 367.

court looks for evidence of fraud, misrepresentation, or some form of manipulation of the LLC to the member's benefit when conducting this analysis. Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 644-45, 618 P.2d 1017 (1980) (applying the same rule to corporations). The party alleging abuse of the LLC form bears the burden of proof. Jet Boats, Inc. v. Puget Sound Nat'l Bank, 44 Wn. App. 32, 46, 721 P.2d 18 (1986). "The absence of a finding of fact in favor of the party with the burden of proof about a disputed issue is the equivalent of a finding against that party on that issue." Car Wash Enters., Inc. v. Kampanos, 74 Wn. App. 537, 546, 874 P.2d 868 (1994).

Here, none of the trial court's findings of fact demonstrated fraud, misrepresentation, or abuse of the LLC form by the Curtises. Thus, by granting Milosavljevic offsets against the loan for his expenditures and conveyance of the Kenmore parcel to Hidden Creek, the trial court unjustifiably disregarded the LLC form.[9] Because we determine offsets were improper,[10] we decline to decide whether the trial court properly computed their application to the loan agreement.

---

[9] Because doing so would also require piercing the form of Hidden Creek, Milosavljevic is likewise not entitled to any offset for his personal services in developing the Kenmore parcel.

[10] In support of his claim that he is entitled to offsets, Milosavljevic additionally advances an unjust enrichment theory. But he cannot use the theory of unjust enrichment to circumvent the protections of the LLC form. See McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc., 339 F.3d 1087, 1093-1096 (9th Cir. 2003) (disallowing unjust enrichment claim against a Delaware public corporation where piercing the corporate veil was unjustified); see also QVC, Inc. v. OurHouseWorks, LLC, 649 Fed.Appx. 223, 228 (3d Cir. 2016) ("[P]ermitting a party that has contracted with a subsidiary to recover damages from a corporate parent on an unjust enrichment theory would allow plaintiffs to evade Illinois corporate liability limitations. QVC cannot use the equitable remedy of unjust enrichment to circumvent state veil-piercing requirements . . ."); see also N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp., 515 Fed.Appx. 176, 179-181 (3d Cir. 2013) (rejecting an unjust enrichment claim on the basis that piercing the corporate veil was unjustified).

2. Interest on the $239,404.80 Payment

Curtis argues that the trial court erred by not imposing a 12 percent interest rate on Milosavljevic's $239,404.80 payment. Milosavljevic argues the trial court properly found no interest due on the payment, because it was rendered voluntary by the Bankruptcy Court's Order of Discharge. We agree with Milosavljevic.

Under 11 U.S.C § 524(a), "any judgment of any court that does not honor [a] bankruptcy discharge is 'void' to that extent." In re Pavelich, 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999). If a state court judgment purports to establish personal liability of a debtor on a discharged debt, the judgment is void. Pavelich, 229 B.R. at 782. A federal court need not give full faith and credit to state court judgments that are void under 11 U.S.C. § 524(a)(1). Pavelich, 229 B.R. at 782.

While state courts cannot "vary the terms of the discharge, they have considerable authority to except particular debts from discharge," and "determine whether a particular debt is or is not within the discharge." Pavelich, 229 B.R. at 783. State court jurisdiction to determine dischargeability is concurrent with federal bankruptcy court jurisdiction. Herring v. Texaco, Inc., 161 Wn.2d 189, 195, 165 P.3d 4 (2007). We review de novo whether a debt is discharged by an order of discharge. See DeAtley v. Barnett, 127 Wn. App. 478, 483, 112 P.3d 540 (2005) (reviewing de novo whether a bankruptcy discharge that discharged the debtor's obligation of performance also discharged the debtor's corresponding right of first refusal).

A bankruptcy court closes a case after the estate is fully administered. 11 U.S.C. § 350(a). A discharge for cause held after notice and hearing discharges all plan debts. 11 U.S.C. § 1141(d)(5)(A). But a discharge does not eliminate a debtor's obligation to pay debts excepted from discharge by 11 U.S.C. § 523. 11 U.S.C. § 1141(d)(2); see also Pavelich, 229 B.R. at 783 (referring to child support debts subject to 11 U.S.C. 523(a)(5), drunk driving injury debts subject to 11 U.S.C. 523(a)(9) as examples of debts that a state court has jurisdiction to decide whether they are exempt from discharge).

The Order of Discharge here granted a discharge under 11 U.S.C. § 1141, and declared that the bankruptcy estate was fully administered and thus closed. The Order of Discharge made no reservation in its grant of discharge under 11 U.S.C. § 1141. The Bankruptcy Court entered the Order of Discharge based on an erroneous understanding that Milosavljevic had fully complied with his obligations to the Curtises. But even if the Order wrongfully discharged the plan, Curtis's debt is not of a kind enumerated by 11 U.S.C. § 523. Additionally, even in full view of the fact that not all facets of the plan were complied with before the original Order of Discharge, the Bankruptcy Court recently declined to vacate the Order of Discharge. Thus, the trial court, acting in concurrent jurisdiction with the federal bankruptcy courts, could not have properly excepted Curtis's debt from discharge.

In accord with its determination that the Order of Discharge discharged all of Milosavljevic's Chapter 11 plan obligations, the trial court properly declined to

impose interest on the "voluntary payment" of $239,404.80.  The payment was voluntary and as such, no interest is due.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[11]

_Chun, J._

WE CONCUR:

_Andrus, J._                                    _Verellen, J._

---

[11] In light of the above conclusions, we need not address the other issues raised by the parties.