# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JOSEPH R. AND ) 
MELANIE W. ELENBAAS, husband and ) 
wife, and the marital community ) 
composed thereof, ) 
            ) No. 73100-9-I 
                Appellants, ) 
            ) DIVISION ONE 
      v. ) 
            ) 
BANNER BANK, a Washington ) UNPUBLISHED OPINION 
corporation, ) 
            ) 
         Respondent. ) FILED: <u>August 22, 2016</u>

SPEARMAN, J. —Joseph and Melanie Elenbaas appeal a trial court order granting summary judgment in favor of Banner Bank. They contend that there are genuine issues of material fact regarding the timing and existence of their default. Finding none, we affirm.

## FACTS

In 1997, appellants Joseph and Melanie Elenbaas (collectively, the "Elenbaases") borrowed $123,500.00 from Whatcom State Bank, the predecessor of respondent Banner Bank. The Elenbaases executed an adjustable rate note secured by a deed of trust on the Elenbaases' property located at Lot 11, Defiance Park, V-19, P-79-80, Bellingham, Washington.

In 2009, the Elenbaases refinanced the loan with Banner Bank and executed a new promissory note for $177,529.00 (Note). The Note would mature on April 25, 2019 and required the Elenbaases to make 60 monthly payments of

$2,139.36. The first payment was due on May 25, 2009. After the first 60 months, the Note would require 59 payments of $2,126.55, and one final payment of $2,126.31. The Elenbaases also executed a modification of the deed of trust and an assignment of rents.

The Note permitted borrowers to pre-pay without penalty, but early payments would not, unless agreed to in writing, "relieve [the Elenbaases] of [their] obligation to continue to make payments under the payment schedule." Clerk's Papers (CP) at 30. If a payment was 16 or more days late, Banner Bank would impose a late charge. Under the Note, the failure to make any payment when due would be an event of default. Additionally, any failure to comply with or perform any other term, obligation, covenant, or condition contained in the Note or any related documents or any other agreement between the Elenbaases and Banner Bank, would also be considered an event of default. Upon default, Banner Bank had the ability to declare the entire unpaid principal balance and interest immediately due and payable. The Note also permitted Banner Bank to delay or forego enforcing any of its rights or remedies under the Note without losing them.

A purported misunderstanding resulted in the Elenbaases failing to make the first payment when due. The Elenbaases explained that they were under the impression that the first payment was due June 25, 2009, instead of May 25, 2009 as stated in the Note. They made their initial payment on June 19, 2009, four days before what they assumed was the due date, but more than 16 days after the actual due date. Banner Bank informed the Elenbaases that they were

2

behind in their payments and charged late fees accordingly. The Elenbaases continued to make payments behind schedule and consistently be at least one payment in arrears. While this was technically a default under the Note, Banner Bank continued to accept the late payments until 2011.

In March 2011, Banner Bank sent a demand letter and a Notice of Default, indicating that it had not received payments for the months of December, January, or February. The Elenbaases only made a partial payment. Banner Bank sent a demand letter regarding the payments and the Elenbaases' failure to pay the property taxes. The parties corresponded multiple times between 2011 and 2013 regarding payments and late fees.

In October 2013, Banner Bank sent a notice to the Elenbaases accepting their late September payment. In this letter, the bank notified them that they still had an outstanding balance of $3,763.32, which included the October payment due on the 25th. The letter also stated that if the total outstanding amount was not received by November 10, 2013, an additional late charge would be added.

The Elenbaases sent a payment of $2400 sometime in early November, but it was not received on or before November 10, 2013. On November 12, 2013, Banner Bank sent another letter notifying the Elenbaases that the full amount of $3,763.32 was to be paid on or before November 22, 2013 or Banner Bank would be taking further action to collect. At this point Banner Bank began to return the partial payments to the Elenbaases. The checks appeared to cross in the mail; on November 21, 2013, Banner Bank returned the Elenbaases' check # 1505 for $2400, dated November 3, 2013. The Elenbaases sent another check

3

for $1400 (No. 1513) dated November 24, 2013, but it was not received before the next payment became due. While the Elenbaases tendered checks totaling $3800, the outstanding balance increased to $5,902.68. As a result, the Elenbaases remained in arrears.

On December 3, 2013, the Elenbaases attempted to retender check No. 1505.[1] Banner Bank returned both checks on December 19, 2013, indicating that the total amount due as of that date, including late charges and attorneys' fees, was $7,449.14.

From December 2013 to February 2014, the Elenbaases continued sending monthly payments of $2300-2400, albeit late, and made two payments in January. On February 12, 2014, the payment records show that the Elenbaases were only short $1,824.68; the remaining amount consisted of late charges and attorneys' fees. This was the closest the Elenbaases came to being current on their account.

On March 5, 2014, Banner Bank sent the Elenbaases another letter notifying them that they had failed to make payments when due. CP 240-241. The letter stated that the Elenbaases owed $3,964.04 on the 2009 Note balance (prior balance of $1,824.68 plus February payment of $2,139.36), and that Banner Bank had also incurred additional attorneys' fees totaling $10,542.42.[2]

---

[1] The record references a letter sent from the Elenbaases on December 3, 2013, with check No. 1505 for $2,400. The actual correspondence does not appear to be in the record, however.

[2] The fees are listed as "Accrued", which suggests that the $10,542.42 includes the prior amount of $1,332.52 incurred from September–December 2013. CP at 241, 244. Banner Bank's subsequent letter dated April 25, 2014, provides a breakdown of the legal fees.

In this letter, Banner Bank stated that it was holding the $9300 in payments received from December through February. These payments would be applied to the outstanding balance if the Elenbaases remitted the remaining amount on or before March 19, 2014. Banner Bank also notified the Elenbaases that if they failed to bring their account current or contact the bank by the 19th, it would begin to foreclose on the Deed of Trust.

In early April the Elenbaases contacted Banner Bank about the possibility of a loan modification or a reduction in interest. Banner Bank declined and provided the Elenbaases with a breakdown of assessed collection fees, including attorneys' fees and appraisal costs for the property. On May 20, 2014, Banner Bank returned the checks and money orders received from December 2013 to May 2014. As of that date, $17,863.67 (including late fees) was owed on the loan; the total amount of returned funds was $13,800. Banner Bank also sent a proposed repayment agreement under which the Elenbaases would pay a minimum of $19,234.21 on or before May 25, 2014, continue to make monthly payments as scheduled, and pay an additional $400 on the 10th of each month. The agreement would also have required the Elenbaases to open a Banner Bank account from which payments could be transferred automatically.

The Elenbaases did not enter into the proposed Repayment Agreement and sent two payments in June 2014 totaling $6900. Banner Bank returned these payments on June 25, 2014, and reiterated that it would no longer accept partial payments. The total amount due as of June 25, 2014, including accrued fees,

was $35,009.98. Banner Bank suggested that the parties meet in a "final attempt to resolve this matter prior to foreclosure. . . ." CP at 356.

During June and July 2014 the Elenbaases sent a number of letters to Banner Bank. Banner Bank responded on July 2 and on July 23, stating that the Elenbaases would need to pay the reduced amount of $23,918.20 and enter into the proposed Repayment Agreement in order to reinstate their loan. The letter of July 23, 2014 indicated that the Elenbaases' "prior partial payments... [would] not be discussed further" and that there "[would] be no further negotiation regarding any of [the Elenbaases'] other delinquent loan payments." CP at 359. Banner Bank also sent letters to the Elenbaases informing them about the assessed legal fees. The Elenbaases responded on July 24, 2014, explaining their circumstances and requesting an explanation of the legal fees and appraisal charges.

Banner Bank filed suit for a money judgment and a judicial foreclosure on September 9, 2014. The Elenbaases first responded via letter on September 29, 2014, stating that the summons and complaint had not been delivered to them. They contended that Banner Bank had checks in its possession that totaled $39,400, when only $26,744.84 had come due under the Note. The Elenbaases requested that Banner Bank post the checks and provide proof that other checks they submitted had been returned. On October 7, 2014, Banner Bank mailed a copy of the summons and complaint to the Elenbaases and returned $19,900 in checks.

The Elenbaases resubmitted the returned checks on October 18, 2014, and included an additional payment for the month of October. In this letter, they indicated that Banner Bank should have another $20,000 in its possession. Id. The Elenbaases answered the summons and complaint on October 20, 2014. On October 29, 2014, they wrote another letter demanding that the bank "ascertain the location of some $40,000 in checks that [had] been provided [to Banner Bank]." CP at 558. The Elenbaases' indebtedness as of October 29, 2014 totaled $30,594.10 in outstanding loan payments and late charges, $3,248.51 in appraisal fees, and $18,965.63 in attorneys' fees and costs.

Banner Bank responded to the Elenbaases' letter on November 12, 2014, after filing a motion for summary judgment. The Elenbaases filed a notice of absence/unavailability and later moved to continue the hearing in order to obtain counsel. Counsel for the Elenbaases entered a notice of appearance on November 26, 2014. The Elenbaases argued that they sent payments to Banner Bank totaling $41,600, more than the amount that had come due under the Note.

Banner Bank's motion was heard on December 5, 2014, and the trial court granted summary judgment in Banner Bank's favor. The Elenbaases filed a motion to reconsider on December 15, 2014, which was denied.

Banner Bank filed a partial satisfaction of judgment applying funds of $24,400 in partial payments. On January 28, 2015, the bank filed a Motion for Decree of Foreclosure, which was granted on February 4, 2015. On February 12, 2015, the Elenbaases filed their notice of appeal. The Elenbaases moved for a

7

preliminary injunction to halt the sale on March 25, 2015. The trial court denied the injunction and the property was sold on April 10, 2015.

## DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). We review an order granting summary judgment de novo; all facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wn.2d 678, 684, 871 P.2d 146 (1994).

The Elenbaases argue that they were never in default because they made timely payments, notwithstanding the fact that the payments were not in accordance to the schedule required by the Note.[3] They insist that any alleged default resulted from Banner Bank "arbitrarily beg[inning] to refuse their payments." Reply Br. at 9. Banner Bank argues that the loan went into default when the very first payment was late, and remained in default due to the Elenbaases' irregular payments and failure to pay the 2010 property tax.

The Note defines events of default as "the failure to make any payment when due," as well as any failure "to comply with or to perform any other term,

---

[3] The Elenbaases describe this dispute as one involving "he said, she said," and cite Barker v. Advanced Silicon Materials, LLC, (ASIMI), 131 Wn. App. 616, 128 P.3d 633 (2006) in support. But Barker is easily distinguishable. That case involved an employment dispute and claims of sex discrimination and retaliation. Here, we have a contract dispute with a record of late payments that does not involve the weighing of evidence or witness credibility, regardless of how a party may characterize it.

obligation, covenant, or condition contained in the Note or any related documents or any other agreement between [the Elenbaases] and [Banner Bank]." CP at 30. The Elenbaases argue that Banner Bank "never established when their breached occurred." Reply Br. at 10. The record shows that the Elenbaases were at least a month behind in their payments from the Note's inception, and therefore consistently in default.[4] Banner Bank may have continued to accept late and partial payments for an extended period of time, but that did not cure the Elenbaases' breach. Banner Bank did not waive its right to maintain a default by retaining the Elenbaases' checks.

The Elenbaases argue that "neither the Note nor the Deed prevented [them] from paying the full amount due... with a series of smaller checks that together totaled the amount then due and owing." Br. of Appellant at 23. Instead, they contend that Banner Bank's decision to "arbitrarily stop[ ] accepting what it deemed 'partial payments'" was not permitted by the Note or the Deed of Trust. Br. of Appellant at 21.

Nothing in the Note obligated Banner Bank to accept partial payments or payments made on an alternate schedule.[5] The Note clearly states that "[s]ubject

---

[4] While not designated as an assignment of error, the Elenbaases also argue that they should have had time to engage in discovery before Banner Bank brought its motion for summary judgment. They did not move for a continuance to conduct the desired discovery under CR 56(f), however. While the Elenbaases initially proceeded pro se, they did obtain counsel to oppose Banner Bank's motion for summary judgment, and could have moved for a continuance at that time. Their failure to do so precludes them from raising it as a ground for appeal.

[5] At oral argument, counsel for Banner Bank made statements that purported to add terms to the Note and the Deed of Trust. He first stated that the bank was required to accept partial payments, which is not set forth in the documents. Later, he characterized the bank's practice of holding payments as keeping them "in suspense," for which he cited no provision of the loan documents nor to any other portion of the record. We therefore disregard counsel's statements and consider only the evidence in the record.

9

to any payment changes resulting from changes in any index for this loan, Borrower will pay this loan in accordance with the following payment schedule," and sets forth the amounts, due dates, and interest rates. CP at 30. The failure "to make any payment when due under this Note" is an event of default. The Note allows for prepayment, but early payments would not relieve any obligation to continue to make payments under the payment schedule. The bank could therefore accept the partial payments that were made ahead of schedule and the Elenbaases were still required to make the monthly payments as they came due.

The Elenbaases claim that Banner Bank accumulated and held checks that in total, comprised more than the amount that was due.[6] According to them, Banner Bank caused the default by refusing to accept the payments they submitted. The Elenbaases further argued if the bank had properly credited the payments as they had been received, the records would have shown that they prepaid their amounts due.

The Elenbaases disregard the fact that none of their payments were made in accordance with the schedule set forth in the Note. The terms of the Note dictate the circumstances that give rise to the default. Even if Banner Bank had credited every payment it received from the Elenbaases, and the Elenbaases would have been "prepaid," they were still obligated to make subsequent payments in accordance with the schedule, and they often failed to do so. The Elenbaases' comparison is also misleading because it excludes any and all late

---

[6] Although the Elenbaases complaints about whether the checks were returned in a timely manner or held for an unreasonable length of time do not appear to be completely unfounded, they have not shown that it had any effect on the status of their loan.

10

fees, attorneys' fees, and other collection fees in their comparison. Under the terms of the Note, the Elenbaases are required to pay these additional charges and they become part of the total indebtedness.[7]

The Elenbaases argue that there would have been no late fees, attorneys' fees, or the like if Banner Bank had only credited the payments as they received them. But the record shows that even if the payments would have been credited, they would have been appropriately applied towards the amount due resulting from earlier missed payments, and the Elenbaases would have incurred some additional late fees regardless. Regarding the attorneys' fees incurred, the Note permits Banner Bank to hire an attorney to collect if the Elenbaases did not pay. There is no dispute that the Elenbaases failed to make payments in accordance with the schedule, and the bank is entitled to enforce the terms of the Note at the borrower's expense.

Both parties request an award of fees under RAP 18.1, the Note and the Deed of Trust. Under the terms of the Note and the Deed of Trust, Banner Bank is entitled to an award of fees and costs as the prevailing party on appeal.

Affirmed.

WE CONCUR:

---

[7] At oral argument, the Elenbaases claimed for the first time that they were under the impression that fees and costs would be tacked on "at the end." But they cite no contractual or legal basis for this assumption; we therefore do not consider it.

11